800 F.Supp. 587 (1992)
CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, a pension trust, and Paul L. Glover, John R. Johnson, John Broderick and William H. Carpenter, the present Trustees, Plaintiffs,
v.
VAN VORST INDUSTRIES, INC., Elgea I, Inc., Navco, and William M. Caldwell, III, individually, Defendants.
No. 92 C 1810.
United States District Court, N.D. Illinois, E.D.
July 24, 1992.
*588 David S. Allen, Joseph M. Burns, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiffs.
Edward T. Joyce, Richard S. Reizen, and Deborah I. Prawiec, Joyce & Kubasiak, P.C., Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER
PLUNKETT, District Judge.
Plaintiffs Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund and Paul L. Glover, John R. Johnson, John Broderick and William H. Carpenter, Trustees (collectively, the "Fund"), have sued all the named Defendants under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980, for the withdrawal liability of U.S. Bedding, a bankrupt employer allegedly under common control with all the named Defendants. Defendants Navco and William M. Caldwell III ("Defendants")[1] have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Fund's action, initiated more than eight years after U.S. Bedding's failure to pay pursuant to the Fund's demand, is barred by the six-year statute of limitations in 29 U.S.C. § 1451(f).
We have considered material beyond the Complaint submitted by Defendants, that is, the Fund's Proof of Claim in U.S. Bedding's bankruptcy, and so we convert Defendants' motion to one pursuant to Rule *589 56.[2] The Fund was allowed a sur-response brief to respond to the additional materials. We find that the Fund sat on its rights to collect the unpaid withdrawal liability of U.S. Bedding, and we grant Defendants' motion to dismiss.

Background
The Fund is a multiemployer pension fund. U.S. Bedding, a contributing employer to the Fund, filed for Chapter 11 bankruptcy protection in late November 1983.[3] In January 1984, the Fund apparently determined that U.S. Bedding had completely withdrawn within the meaning of 29 U.S.C. § 1383.[4] As required by 29 U.S.C. § 1399(b)(1)(A), on June 19, 1984, the Fund sent U.S. Bedding a notice of withdrawal liability and demand for payment. U.S. Bedding's withdrawal liability amounted to $52,114.00, which the Fund set for payment in eight quarterly installments of $6,825.00 and a ninth installment of $2,316.00. The payments were scheduled to begin on July 1, 1984, and to end on July 1, 1986. Also on June 19, 1984, the Fund filed a Proof of Claim in U.S. Bedding's bankruptcy action for the entire amount of the withdrawal liability.
U.S. Bedding did not make the July 1, 1984, payment or any of the subsequent payments. The Fund took no action until August 28, 1990, when its attorneys sent a letter to U.S. Bedding's attorney requesting information on trades and businesses under common control with U.S. Bedding, as such entities would be jointly and severally liable for U.S. Bedding's unpaid withdrawal liability. U.S. Bedding did not respond.
Despite U.S. Bedding's silence, at an unknown (to us) date sometime after August 1990, the Fund determined that Van Vorst Industries, Inc., Elgea I, Inc., Navco and William M. Caldwell III were under common control with U.S. Bedding under the MPPAA and therefore liable for the withdrawal liability. In March 1992, the Fund filed this action to collect the entire amount of the unpaid withdrawal liability.

Discussion[5]
Congress enacted the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. § 1381 et seq., to protect the solvency of multiemployer pension funds. See Western Confer. of Teamsters Pension Trust Fund v. Thompson Bldg. Materials, Inc., 749 F.2d 1396, 1399 (9th Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985). Among the other powers given to multiemployer pension funds, the MPPAA allows them to collect "withdrawal liability," which is an employer's allocation of the pension fund's vested but unpaid benefits liability, from employers who withdraw from the pension fund. 29 U.S.C. § 1381 (1992); see also Central States, Southeast & Southwest Pension Fund v. Lady Baltimore Foods, Inc., 960 F.2d 1339, 1340 (7th Cir.1992).
The MPPAA requires a pension fund to sent a notice and demand for payment for an employer's withdrawal liability "as soon as practicable" after the employer's complete *590 withdrawal. 29 U.S.C. § 1399(b)(1) (1985). A withdrawn employer is liable for a maximum of twenty years of payments for the amount of its withdrawal liability. 29 U.S.C. § 1399(c)(1)(B) (1985). In the event that the employer fails to make any scheduled payment, it has sixty days to cure the nonpayment. 29 U.S.C. § 1399(c)(2) (1985). If the employer fails to do so, the pension fund may declare the employer in default, accelerate the payments and demand payment of the entire unpaid amount of the withdrawal liability. 29 U.S.C. § 1399(c)(5) (1985).
Once an employer receives a notice and demand for payment from a pension fund, the employer may dispute the amount of the withdrawal liability or assert defenses to its liability. 29 U.S.C. § 1399(b)(2)(A) (1985). Where a dispute exists, either party may initiate arbitration within specified time periods. 29 U.S.C. § 1401 (1985). If the employer fails to initiate arbitration, it waives both its right to dispute the amount of its liability and its right to assert defenses. 29 U.S.C. § 1401(b)(1) (1985). Thereafter, the pension fund may initiate an action in state or federal court to collect the unpaid withdrawal liability. 29 U.S.C. § 1451(c) (1985).
Where an employer is "under common control" with other trades or businesses, all such entities are treated as a single employer. 29 U.S.C. § 1301(b)(1) (1992). All trades or businesses under common control are jointly and severally liable for the unpaid withdrawal liabilities of the others. Central States, Southeast & Southwest Areas Pension Fund v. Chatham Properties, 929 F.2d 260, 264 (6th Cir. 1991); Western Confer. of Teamsters Pension Trust Fund v. H.F. Johnson, Inc., 830 F.2d 1009, 1013 (9th Cir.1987).
The MPPAA contains a statute of limitations, which requires that any action under it be brought at the latest within six years after the accrual of a cause of action. 29 U.S.C. § 1451(f) (1985).[6] The statute of limitations provision does not establish when a "cause of action" accrues, however. The only circuit that has addressed the question has held that a pension fund's cause of action for unpaid withdrawal liability accrues on the date on which payment is not made pursuant to demand, rather than on the date on which the employer completely withdraws from the fund. Joyce v. Clyde Sandoz Masonry, 871 F.2d 1119, 1124 (D.C.Cir.), cert. denied, 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989).
In their motion to dismiss, Defendants contend that this action, filed in March 1992, is untimely under the six-year statute of limitations because the Fund's cause of action accrued when U.S. Bedding failed to make the July 1, 1984, payment. The Fund argues that Defendants are equitably estopped from asserting the statute of limitations defense due to U.S. Bedding's failure to respond to their attorney's August 28, 1990, letter regarding trades or businesses under common control. The Fund also asserts that the statute of limitations begins to run anew for each missed payment on the payment schedule. Based on these arguments, the Fund claims that the statute of limitations has run, if at all, only as to first two payments, and that at the least it may maintain this action against Defendants for the remaining seven payments.
This case presents two legal issues of first impression for this Court: first, whether the statute of limitations set out in 29 U.S.C. § 1451(f) accrues anew each time an individual payment under a payment schedule is missed; and second, whether the doctrine of equitable estoppel applies to § 1451(f). Resolution of the latter issue requires that we determine whether § 1451(f) is a jurisdictional or procedural statute of limitations.
*591 We hold that under § 1451(f), the statute of limitations accrues for the entire unpaid withdrawal liability on the first date on which a payment is missed. We base this holding on § 1399(c)(5), the provision that allows a pension fund, upon nonpayment, to declare a default and accelerate the remaining payments as due and owing, because this section provides a reasonable mechanism for a pension fund to protect its rights. The Fund is correct that the language of § 1399(c)(5), that is, its use of "may" instead of "shall", indicates that the acceleration of payments is discretionary rather than mandatory. However, we conclude that a pension fund cannot use its own failure to declare a default and accelerate payment of the entire unpaid liability to extend its time for bringing suit under § 1451(f).
By its language, § 1399(c)(5) contemplates that a pension fund might desire another course of action than a collection suit, such as a negotiated settlement for part of the liability, an extended payment plan or even a decision not to pursue an insolvent employer where the cost of such efforts would outweigh the anticipated recovery. In such instances, a pension fund might very well desire not to declare a default and accelerate payments. We do not believe, however, that Congress used the discretionary language of § 1399(c)(5) in order to allow a pension fund to ignore an available opportunity to protect its rights and achieve prompt collection of unpaid withdrawal liability in favor of grossly belated collection efforts.
The Fund relies heavily on the fact that, in this case, it did not declare a default and accelerate the payments. The Fund at least implicitly acknowledges that had it done so, its cause of action as to the entire amount of the withdrawal liability would have accrued when the first payment was missed, for it argues vehemently that it never acted to accelerate the payments. (Pl.'s Response Br. at 9; Pl.'s Sur-Response Br. at 4-8).[7] Where the occurrence of the event triggering the accrual of the cause of action, such as declaring a default, was solely in the discretion and control of the Fund, it may not use that discretion and control to avoid the effect of the statute of limitations.
The Fund knew when it sent the notice and demand to U.S. Bedding on June 19, 1984, that U.S. Bedding was in bankruptcy; in fact, it filed its Proof of Claim in the bankruptcy action on the very same day. By the fact of the bankruptcy, the Fund knew it would not receive either the first, or any, payment until the bankruptcy was discharged. The Fund had no good faith belief that if it waited a little longer, U.S. Bedding would come through on the missed payments or contact the Fund to negotiate a settlement for any part of the withdrawal liability.
U.S. Bedding's bankruptcy did not establish that declaring a default would be futile. Rather, the fact of the bankruptcy should have informed the Fund that it needed promptly to examine other avenues to obtain payment, especially identification of solvent entities under common control. The declaration of a default would have allowed the Fund to obtain the entire unpaid amount from such entities as soon as they were identified, even if that occurred before the entire payment schedule had *592 run. Yet, instead of exerting even this slight effort, the Fund did absolutely nothing. Worse yet, it waited four years after the payment schedule ended before it even contacted U.S. Bedding about the existence of entities under common control. And when no response to its single inquiry was forthcoming, it waited to file suit until March 1992, allegedly because U.S. Bedding kept it from learning of Defendants. Yet somewhere between August 1990 and March 1992, the Fund did manage to identify those businesses that might be jointly and severally liable, though, not surprisingly, it is silent as to its method of obtaining this information.
The application of the Fund's theory of accrual of the statute of limitations would allow the Fund to sue as late as July 1992 for the last payment, which was due in July 1986. More importantly, the application of the Fund's theory to a payment schedule spread out over twenty years would give a pension plan twenty-six years from the date of the first missed payment before it had to sue on the last missed payment. Fashioning a rule that would lead to such an absurd result is entirely at odds with the purpose of a six-year statute of limitations, and we decline to do so.
We next address whether the doctrine of equitable estoppel applies to 29 U.S.C. § 1451(f). The Fund argues that Defendants are equitably estopped from asserting the statute of limitations defense, at least as to the payments on which the statute of limitations ran after August 1990, because U.S. Bedding did not respond to the Fund's inquiry regarding businesses under common control. As a threshold matter, we must decide whether § 1451(f) is a jurisdictional or procedural statute of limitations, for the doctrine of equitable estoppel does not apply to jurisdictional statutes of limitations. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).
According to the Seventh Circuit, a statute of limitations is jurisdictional "`[i]f the right being asserted is one unknown to the common law, [and thus] the time limitation is an inherent element of the right and the power of the tribunal to hear the matter.'" Smith v. City of Chicago Heights, 951 F.2d 834, 838 (7th Cir.1992) (quoting Charleston Comm. Unit Sch. Dist. No. 1 v. Illinois Educ. Labor Rel. Bd., 203 Ill. App.3d 619, 149 Ill.Dec. 53, 55, 561 N.E.2d 331, 333 (1990)). Similarly, a statute of limitations is procedural "`[i]f the right upon which the request for relief is based is a common law right, [and thus] the time limitation is merely a procedural matter not affecting the jurisdiction of the tribunal.'" Id. Using this analysis, the court concluded that because a cause of action under 42 U.S.C. § 1983 is essentially a personal injury action, which was recognized at the common law, the statute of limitations was procedural. Id. at 839.
The District of Columbia Circuit applied a different test to determine whether a statute of limitations was jurisdictional in Hardin v. City Title & Escrow Co., 797 F.2d 1037 (D.C.Cir.1986). There, the court analyzed both the language of the statute, the relative placement of the limitations and jurisdiction provisions within the statute, and the legislative history to determine if Congress intended "to make the time limitation ... a jurisdictional requirement." Id. at 1039-40. In the statute at issue there, 12 U.S.C. § 2614, the time limitation was contained in the same sentence as the grant of concurrent jurisdiction to the federal and state courts. Id. at 1039. The court found, among other things, that this structure was indicative of Congress's intent to make the limitations period jurisdictional. Id. The court contrasted this structure to that of 15 U.S.C. § 15b, in which the statute of limitations is contained in a wholly separate provision from the grant of jurisdiction. Id. at 1040.
Under either analysis, we find that the statute of limitations in § 1451(f) is jurisdictional. Using the Seventh Circuit's analysis in Cada, which is controlling here, a pension fund's entitlement to payment of withdrawal liability by an employer is a creation of the MPPAA; it did not exist at the common law. The entitlement to withdrawal liability would be meaningless if a *593 pension fund did not have the right to sue where that liability remained unpaid. A pension fund's right to sue for unpaid withdrawal liability arises solely from the MPPAA. Western Confer. of Teamsters Pension Trust Fund v. Thompson Bldg. Materials, Inc., 749 F.2d 1396, 1404 (9th Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985). On this basis, then, the statute of limitations in § 1451(f) is jurisdictional.
If we apply the Hardin analysis of the District of Columbia Circuit, the statute of limitations provision in § 1451(f) falls somewhere in between that of 12 U.S.C. § 2614 and 15 U.S.C. § 15b. In § 1451, the statute of limitations is contained in the same provision as the grant of jurisdiction to the federal and state courts, although it is in a separate subparagraph, not in the same sentence.[8] Unlike 15 U.S.C. § 15b, however, the statute of limitations is not contained in an entirely separate provision. The House Reports on the MPPAA indicate that the limitations period was always a part of the same provision as the jurisdictional grant, as it appears in the statute as passed.[9]See H.R.Rep. No. 869, 96th Cong., 2nd Sess., pt. 1, at 2967-8 (1980); H.R.Rep. No. 869, 96th Cong., 2nd Sess., pt. 2, at 3031-2, (1980), U.S.Code Cong. & Admin.News 1980, 2918, 2974-2975, 2993. We believe that the limitations provision in § 1451(f) is more comparable to 12 U.S.C. § 2614 than to 15 U.S.C. § 15b, and that the inclusion of the limitations provision and the grant of jurisdiction in the same provision was intentional. Thus, although this analysis does not provide as compelling a conclusion as the Cada analysis does, we find that § 1451(f) is a jurisdictional statute of limitations under Hardin as well.
The Fund insists that the Seventh Circuit has already determined that § 1451(f) is not jurisdictional because it has applied the doctrine of equitable tolling to the arbitration provision of the MPPAA.[10] We are not convinced by this argument for two simple reasons. First, the Seventh Circuit has never decided whether the statute of limitations in § 1451(f) is jurisdictional or procedural, or whether equitable tolling applies to it. Second, the cases upon which the Fund relies do not support this proposition. One of those cases, Banner Indus., Inc. v. Central States, Southeast & Southwest Areas Pension Fund, 875 F.2d 1285 (7th Cir.1989), applied equitable tolling to the arbitration requirement of the MPPAA because the employer contesting its withdrawal liability had promptly filed an action in federal court to address that issue. Another, Chicago Truck Drivers v. Central Transport, Inc., 888 F.2d 1161 (7th Cir. 1989), allowed the time period for arbitration to be tolled where the employer and the pension fund were disputing the withdrawal liability in the employer's bankruptcy action. The continued viability of each decision was called in question by the Seventh Circuit in Central States, Southeast & Southwest Areas Pension Fund v. Slotky, 956 F.2d 1369, 1377 (7th Cir.1992) ("Both decisions [in Banner and Central Transport] can be questioned, given Congress's evident desire that challenges to *594 withdrawal liability be resolved quickly, given that the employer could pursue his judicial and arbitral remedies simultaneously, ... and given, therefore, that it would not have been infeasible for the employer to commence arbitration.").[11] Yet the Fund cites Slotky as well to support its argument that § 1451(f) has been held to be jurisdictional by the Seventh Circuit.
The Fund wants us to apply equitable estoppel, not equitable tolling, here. The doctrine of equitable estoppel is a principle of equity that prevents a defendant from taking affirmative steps to keep a plaintiff from suing before the statute of limitations runs. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). An example of equitable estoppel would be where the defendant promises not to plead the statute of limitations defense. Id. Equitable estoppel acts to toll the statute of limitations, but it does not apply to jurisdictional statutes of limitations. Id.
Because we find that the statute of limitations in 29 U.S.C. § 1451(f) is jurisdictional rather than procedural, the doctrine of equitable estoppel does not help the Fund. We have already determined that the Fund's claim for U.S. Bedding's entire withdrawal liability accrued when the first payment was missed. Consequently, without equitable estoppel to salvage any portion the Fund's claim against Defendants, the Fund's action for the entire amount of U.S. Bedding's unpaid withdrawal liability is barred by the six-year statute of limitations in 29 U.S.C. § 1451(f).
Even if we were to hold that § 1451(f) was a procedural statute of limitations, so that equitable estoppel was available to the Fund, the Fund has failed to allege conduct by Defendants that constitutes equitable estoppel. The Fund points to U.S. Bedding's failure to respond to its single letter as U.S. Bedding's concealment of the identities of Defendants. The Fund contends that U.S. Bedding, as a debtor-in-possession, owed a fiduciary duty to its creditors under the bankruptcy laws, including the Fund, and that the MPPAA requires an employer to respond to any request for information within 30 days.[12] Moreover, the Fund argues, the statute of limitations in § 1451(f) imposes upon it no obligation of due diligence. Therefore, because U.S. Bedding breached its fiduciary and statutory duties, according to the Fund, Defendants should not be entitled, as a matter of equity, to the defense that the statute of limitations has run on the Fund's claim.
The Fund is a fiduciary as well, and it is in that capacity that it is able to bring this suit. 29 U.S.C. § 1451(a).[13] But whether held to the standard of a fiduciary or merely the standard of any other plaintiff, we find that the Fund did have an obligation to determine the identities of other potentially liable parties from whom the unpaid withdrawal liability of a bankrupt employer might be recovered. We decline to determine what would constitute sufficient diligence under all circumstances; we hold only that sending a single letter six years after the employer failed to pay upon demand, while knowing of the employer's bankruptcy, does not satisfy any reasonable standard of diligence. There were obviously other avenues available to the Fund to discover the needed information, *595 for it belatedly used one of them to identify Defendants before it filed this suit.[14] Any party seeking to enforce its rights in court must exercise some diligence to avoid the running of the statute of limitations, including reasonable efforts to identify the appropriate defendants, and for that reason the Fund should have done more than it did. See Brock v. TIC Int'l Corp., 785 F.2d 168, 172 (7th Cir.1986) (where Department of Labor had knowledge from report of possible breach of trust by plan, three-year statute of limitations in 29 U.S.C. § 1113 began to run even though Department did not know identity of wrongdoer; Department had obligation to investigate).[15] Moreover, the Fund was not prevented from learning of Defendants' identities by U.S. Bedding's silence, for it eventually identified them by other means. On this basis as well, then, equitable estoppel does not toll the statute of limitations. The Fund's claim against Defendants is untimely under 29 U.S.C. § 1451(f).

Conclusion
We grant Defendants Navco and William M. Caldwell III's Motion to Dismiss on the grounds that the Fund's action is barred by the statute of limitations. This action is dismissed with prejudice as to Navco and William M. Caldwell III.
NOTES
[1] Van Vorst Industries, Inc., has apparently never been served. Elgea I, Inc., has had a default judgment entered against it.
[2] Defendants filed other materials outside the Complaint as well, and ask us to take judicial notice of them, rather than to convert this motion to one brought under Rule 56, as required by Rule 12(b). We decline to do so, as we consider conversion the appropriate procedure here. We have not considered any of the materials other than the Fund's Proof of Claim in U.S. Bedding's bankruptcy, which is relevant only as to the date it was filed, as evidence of when the Fund knew of the bankruptcy, a fact did not included in the Complaint. The Fund was given the opportunity to respond to the additional materials in its sur-response brief.
[3] The pleadings and briefs do not disclose either if U.S. Bedding's bankruptcy case has ended, or if it has, when the Fund received notice of that fact.
[4] When an employer has completely withdrawn from a multi-employer plan, it ceases to have an obligation to contribute to the plan, except for payment of its withdrawal liability. 29 U.S.C. § 1383 (1985).
[5] Under Rule 56(c), we may grant Defendants' motion only if there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
[6] Section 1451(f) states:

An action under this section may not be brought after the later of 
(1) 6 years after the date on which the cause of action arose, or
(2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.
29 U.S.C. § 1451(f) (1985).
[7] The Fund makes its argument largely in response to Defendants' contention that the Fund's Proof of Claim in U.S. Bedding's bankruptcy, which indicated that the Fund was claiming the entire amount of the withdrawal liability, operated as a claim for the entire amount so as to trigger the statute of limitations. This argument is flawed. There is no dispute here that the entire amount of the liability was claimed by the Fund in June 1984; the Fund's notice and demand of withdrawal liability to U.S. Bedding of June 19, 1984, established that fact. The Fund's acknowledgement of the entire liability did not serve to declare a default and accelerate the payments within the meaning of the MPPAA, however. Moreover, Defendants do not show us that the Fund could have filed a new Proof of Claim for each installment payment before the period for filing Proofs of Claim in U.S. Bedding's bankruptcy expired. As we see it, the Fund's conduct with regard to the Proof of Claim has no bearing on our determination of its obligations to accelerate payments or the accrual date of the Fund's cause of action under the MPPAA, and the Fund's Proof of Claim is not inconsistent with the payment schedule.
[8] The grant of jurisdiction is contained in 29 U.S.C. § 1451(c), and the statute of limitations is contained in 29 U.S.C. § 1451(f).
[9] The statute of limitations for ERISA is found in 29 U.S.C. § 1113 (1992). While it is worded largely the same as § 1451(f), it is placed in a separate provision, unlike § 1451(f). The issue of whether § 1113 is jurisdictional or procedural has apparently never been addressed by any federal circuit, so it provides no guidance on our problem here.
[10] The Fund states elsewhere that, "[S]ection 1451(f) is not a jurisdictional prerequisite to the initiation of the MPPAA collection action, but rather is subject to the principle of equitable tolling." (Pl.'s Br. at 4.) The Fund offers no authority whatsoever for this proposition. The Seventh Circuit cases cited by the Fund only later in its brief in the discussion of this proposition applied equitable tolling only to the arbitration provision of the MPPAA, not to § 1451(f), and the continuing viability of those cases has been called into question by the Seventh Circuit itself. See infra at 593.

We have been unable to find a single case that applied the doctrine of equitable tolling to 29 U.S.C. § 1451(f). Under these circumstances, we admonish counsel for the Fund to exercise more care in interpreting the case law and framing its arguments, for this one comes close to violating Rule 11.
[11] It may be that equitable tolling is allowed where equitable estoppel is not, for equitable tolling "is read into every federal statute of limitations." Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); see also Taylor v. Freeland & Kronz, ___ U.S. ___, ___, 112 S.Ct. 1644, 1650, 118 L.Ed.2d 280 (1992). Thus, the availability of equitable tolling may not be dispositive of the availability of equitable estoppel. But see Cada, 920 F.2d at 451 (both equitable estoppel and equitable tolling are read into every federal statute of limitations).
[12] 29 U.S.C. § 1399(a) (1985).
[13] Section 1451(a) states, in pertinent part,

A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.
29 U.S.C. § 1451(a) (1985).
[14] Even under the doctrine of fraudulent concealment, a theory similar to equitable estoppel, the defendant's concealment must go to the existence of the plaintiffs claim, not to the identity of the tortfeasor. Central States, Southeast & Southwest Areas Pension Fund v. Van Vorst Indus., Inc., No. 91 C 2624, slip op. at 6, 1992 WL 69988 (N.D.Ill. March 27, 1992). The Fund offers no authority to support its contention here that equitable estoppel applies to shield a plaintiff who knows of his injury but fails to learn the identity of the responsible party before the statute of limitations runs.
[15] In Brock, the Seventh Circuit addressed the pre-1987 version of 29 U.S.C. § 1113, which provided for accrual of the limitations period based on both constructive and actual knowledge of the cause of action. In 1987, § 1113 was amended to delete the constructive knowledge provision. While § 1451(f) contains only an actual knowledge provision, it includes "acquired or should have acquired" language that is not found in § 1113.