Joseph F. CADA, Plaintiff–Appellant,

v.

## BAXTER HEALTHCARE CORPORATION, Defendant–Appellee.

### No. 90–1888.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1990.

Decided Dec. 13, 1990.

Rehearing Denied Jan. 17, 1991.

John A. Cook and Mercedes Matias, Hough, Cook, Weatherhead & Kinsella, Chicago, Ill., for plaintiff-appellant.

David J. Parsons, Dana S. Connell, and Kathryn A. Mrkonich, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., POSNER and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff, Joseph Cada, complains that the defendant, Baxter Healthcare, fired him in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* The district court granted summary judgment for the defendant on the ground that the suit was time-barred, and dismissed the suit. The appeal presents fascinating and important questions regarding statutes of limitations generally and the age discrimination statute of limitations in particular.

Cada was the manager of Baxter's "creative services" department, the principal function of which was to produce the catalog of the company's drug products (the "armamentarium," as such catalogs are known). On the catalog project Cada reported to Jim Becks, the company's director of sales and marketing, although in all other respects he reported to Jim Stauner, the vice president for marketing. In April 1987 Becks was promoted to vice president for business planning and development but retained supervisory authority over the catalog project. The project was chronically behind schedule and over budget, and shortly after his promotion Becks asked Cada for a comprehensive report. Armed with this report Becks discussed the project with the company's president and the other vice presidents in a series of meetings late in April. They decided that the department should be reorganized to emphasize more aggressive tactics for marketing Baxter's products and that Cada was not the man to head up the reorganized department. On May 5 Becks met with Cada to inform him that the department would be reorganized and that he assumed Cada would be retiring because he was approaching 65. When Cada responded that he was not planning to retire,

Becks told him that in that event he would be terminated about two weeks after a new manager for the department was hired, probably in July. Cada claims that he did not believe Becks had the authority to fire him and was even unsure whether Becks was attempting to fire him, as distinct from urging him to take early retirement.

Right after the meeting with Becks, Cada did two things. He went to the company's human resources department and obtained a packet of outplacement and benefit forms, which he filled out a few days later. And he tried to see Stauner, whom he considered his real supervisor. Stauner was unavailable and it was not till May 22 that they were able to meet. At that meeting Stauner told him that the decision to fire Cada had been made by Becks and that he, Stauner, could do nothing about it. On July 7 Cada's replacement appeared. She was a young woman. Three weeks after she started work, Cada was terminated. He filed his complaint with the Equal Employment Opportunity Commission on March 4, 1988, which was more than 300 days after his meeting with Becks on May 5, 1987, but less than 300 days after his meeting with Stauner on May 22. The administrative statute of limitations in the age discrimination law is 300 days for cases filed in Illinois. *Davidson v. Board of Governors*, 920 F.2d 441, 442 (7th Cir. 1990).

In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the question was whether a cause of action for discrimination accrued when the plaintiff was denied tenure, allegedly on discriminatory grounds, or when his employment contract expired a year later; the Court held that it was the former. Baxter argues that, similarly, the date on which Cada was told he was terminated—May 5—was the date on which the statute of limitations started to run, not May 22 when the termination was confirmed by Stauner, or the end of July when Cada actually left Baxter's employ. Against this argument, which persuaded the district judge, Cada hurls a barrage of counterarguments: that Becks had no authority to fire Cada, so there was no adverse personnel action on

May 5—the decision to terminate was made by Stauner on May 22 when he met with Cada; that whatever Becks's actual authority, Cada sincerely and reasonably believed that Becks was not authorized to fire him; and that not until Cada learned that his replacement was young and relatively inexperienced did he realize he was a victim of age discrimination, so the statute of limitations did not begin to run until then (July 7).

■ To Cada's point about Becks's authority to fire him on May 5, Baxter's first reply is that all that matters is that a reasonable person in Cada's position would have thought he was being fired. This cannot be right. Suppose someone had forged a letter from Becks to Cada, announcing that Cada was fired, which Cada received on May 1. Would the statute of limitations have begun to run on May 1? Surely no, though at argument Baxter's counsel said yes. Or suppose a year earlier Cada had gone to a fortune teller, who had gazed into her crystal ball and there seen Cada drawing unemployment benefits. Would the statute of limitations have begun to run on that day? Again the answer is no. The statute of limitations does not begin to run until the defendant takes some action, whatever the plaintiff knows or thinks. *Ricks* does not hold that the statute of limitations begins to run as soon as the handwriting is on the wall. The point was not that when Ricks was denied tenure he knew his days were numbered. The point was that the denial of tenure was an adverse personnel action forbidden if done for discriminatory reasons; it was irrelevant that the full consequences of the action were not felt till later, when Ricks, unprotected by tenure, was let go upon the expiration of his employment contract. In our forged-letter and crystal-ball cases the employee learned his fate before any adverse personnel action was taken, and until it is taken his claim has not accrued and the statute of limitations has not begun to run. Compare *In re UNR Industries, Inc.*, 725 F.2d 1111, 1119 (7th Cir.1984).

So if Becks was merely telling Cada that he had better take early retirement be-

cause he, Becks, was going to advise Stauner, Cada's direct superior, to fire him, then no adverse personnel action was taken at the May 5 meeting and the statute of limitations did not begin to run then, any more than it would have begun to run in *Ricks* if and when a faculty member had told Ricks a month before the vote on tenure that he was going to vote against him. But Baxter submitted to the district court a mass of testimonial material all to the effect that, before May 5, the president of the division of Baxter in which Cada worked had authorized Becks to reorganize the creative services department and in the process to jettison Cada. This evidence, which was not contradicted, showed that Becks was authorized to fire Cada and that he did so at the May 5 meeting. By Cada's own version of the meeting of May 22 with Stauner, Stauner merely made clear at that meeting that Becks had been acting within his actual authority when he fired Cada. The May 5 meeting was the equivalent of the tenure vote in *Ricks*. It was the making and communication to Cada of the decision to fire him effective within a few weeks after Cada's replacement came on board.

We just said "communication," but suppose the decision was not *clearly* communicated to Cada. Suppose, as Cada's deposition suggests, that Becks pussyfooted around and as a result Cada failed to get the message until his interview with Stauner on May 22. And suppose further that until his replacement appeared on July 7, Cada could not be reasonably confident that he had been fired because of his age. Would it not be unreasonable to hold that the statute of limitations began to run before he was in full possession of the information—that he had indeed been fired and that he had been replaced by a much younger person—which he needed in order to decide whether he had a claim against Baxter under the age discrimination law?

▌ Unfortunately it is not possible to answer this question with a simple yes or no. We must first distinguish between the *accrual* of the plaintiff's claim and the *tolling* of the statute of limitations, then

between two doctrines of tolling, last between different kinds of information that Cada may or may not have possessed. Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured. The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the "discovery rule" of federal common law, which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law) in the absence of a contrary directive from Congress. *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1004 (7th Cir. 1984), overruled on other grounds in *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990); *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988); *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.1987); *Nichols v. Hughes*, 721 F.2d 657, 659 (9th Cir.1983); *Trotter v. International Longshoremen's & Warehousemen's Union*, 704 F.2d 1141, 1143 (9th Cir.1983) (per curiam). The discovery rule is implicit in the holding of *Ricks* that the statute of limitations began to run "at the time the tenure decision was made *and communicated* to Ricks," 449 U.S. at 258, 101 S.Ct. at 504 (emphasis added). If Cada did not discover that he had been injured, i.e., that a decision to terminate him had been made, until May 22, the statute of limitations did not begin to run till that day and his suit is not time-barred.

▌ It may not be time-barred even if the statute of limitations began to run earlier. Tolling doctrines stop the statute of limitations from running even if the accrual date has passed. Two tolling doctrines might be pertinent here (others include the plaintiff's incapacity and the defendant's fugitive status). One, a general equity principle not limited to the statute of limitations context, is equitable estoppel, which comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead

the statute of limitations. *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946); *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 292 (7th Cir.1986); *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir.1983). Equitable estoppel in the limitations setting is sometimes called fraudulent concealment, but must not be confused with efforts by a defendant in a fraud case to conceal the fraud. To the extent that such efforts succeed, they postpone the date of accrual by preventing the plaintiff from discovering that he is a victim of a fraud. *Jensen v. Snellings, supra*, 841 F.2d at 606–07. They are thus within the domain of the discovery rule. Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff from suing in time.

If Baxter had told Cada that it would not plead the statute of limitations as a defense to any suit for age discrimination that he might bring, this would be a case for equitable estoppel; so also if Baxter had presented Cada with forged documents purporting to negate any basis for supposing that Cada's termination was related to his age. Cada tries to bring himself within the doctrine by contending that the reorganization of the creative services department was a ruse to conceal the plan to fire him because of his age. This merges the substantive wrong with the tolling doctrine, ignoring our earlier distinction between two types of fraud. It implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, "We're firing you because of your age." It would eliminate the statute of limitations in age discrimination cases.

██ The second tolling doctrine is equitable tolling. It permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim. *Holmberg v. Arm-*

*brecht, supra*, 327 U.S. at 397, 66 S.Ct. at 585; *Mull v. ARCO Durethene Plastics, Inc., supra*, 784 F.2d at 291. Equitable tolling is frequently confused both with fraudulent concealment on the one hand and with the discovery rule—governing, as we have seen, accrual—on the other. It differs from the former in that it does not assume a wrongful—or any—effort by the defendant to prevent the plaintiff from suing. It differs from the latter in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant. If a reasonable man in Cada's position would not have known until July 7 that he had been fired in possible violation of the age discrimination act, he could appeal to the doctrine of equitable tolling to suspend the running of the statute of limitations for such time as was reasonably necessary to conduct the necessary inquiry. The qualification "possible" is important. If a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run—for even after judgment, there is no certainty.

██ The rule in the federal courts is that both tolling doctrines—equitable estoppel and equitable tolling—are, just like the discovery rule, grafted on to federal statutes of limitations. *Holmberg v. Armbrecht, supra*, 327 U.S. at 397, 66 S.Ct. at 585; *Irwin v. Veterans Administration*, — U.S. —, —, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990). To this as to most legal generalizations, there are exceptions. Neither tolling doctrine applies to statutes of repose, *Short v. Belleville Shoe Mfg. Co., supra*, 908 F.2d at 1391; their very purpose is to set an outer limit unaffected by what the plaintiff knows. Neither applies to a jurisdictional statute of limitations. *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040–41 (D.C.Cir.1986). These exceptions are inapplicable to the age discrimination law, and we have held therefore that both tolling doctrines apply to cases under that law. *Mull v. ARCO*

*Durethene Plastics, Inc., supra,* 784 F.2d at 291–92.

██ Many cases, it is true, in the age discrimination field as in other areas, fuse the two doctrines, presumably inadvertently. The most recent example in this circuit is *Stark v. Dynascan Corp.,* 902 F.2d 549, 551 (7th Cir.1990), which quotes from an earlier case the erroneous statement that "to invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him." In fact that is what the plaintiff must show if he is trying to invoke equitable *estoppel.* For equitable *tolling* all he need show is that he could not by the exercise of reasonable diligence have discovered essential information bearing on his claim. The fusion of the two doctrines in *Stark* was inadvertent. Had it been deliberate, the court would have had to circulate its opinion to the full court before publication, because it would have been overruling *Mull*—not to mention the Supreme Court (see below). 7th Cir.R. 40(f). That was not done.

*Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45 (2d Cir.1985), fuses the two tolling doctrines in a different way by saying that equitable tolling differs from equitable estoppel only in that the plaintiff does not know he has a claim in the former case and does in the latter; in both cases the defendant has taken steps to prevent the plaintiff from suing. Plainly, the second part of this proposition is incorrect. *Holmberg* makes clear that equitable tolling does not require any conduct by the defendant. 327 U.S. at 397, 66 S.Ct. at 585. See also *Irwin v. Veterans Administration, supra,* —— U.S. at ——, 111 S.Ct. at 457. The first part of the proposition may be a correct generalization—the commonest case of equitable estoppel to plead the statute of limitations is where the defendant has promised not to plead it, and in such a case the plaintiff knows full well that he has a cause of action—but it should not be understood as creating a rule.

██ If the discovery rule extended the statute of limitations to May 22, then Cada is home free; and likewise if the statute of limitations was tolled between May 5 and July 7 (when he discovered that he had been replaced by a younger person), for his suit was, at worst, untimely by only two weeks. We consider the possibility of tolling first. The question is whether the statute of limitations was tolled for at least two weeks. Here the essential thing to grasp is that while it is entirely clear that the discovery rule if applicable gives the plaintiff the entire statute of limitations period in which to sue, counting from the date of discovery, and it is only a little less clear that if fraudulent concealment is shown the court must subtract from the period of limitations the entire period in which the tolling condition is in effect, *Orr v. Midland–Ross Corp.,* 600 F.2d 24, 33 (6th Cir.1979), for otherwise the defendant would obtain a benefit from his inequitable conduct, it is not at all clear that equitable tolling—a doctrine that adjusts the rights of two innocent parties—is as generous. When Cada discovered on July 7 that he had been replaced by a young and (as it seemed to him) inexperienced employee, he still had eight months in which to file his claim before the statute of limitations expired. He offers no excuse for the delay. When asked at his deposition when it was that he had first considered filing a complaint, he answered, "When I started kicking myself in the fanny for letting it go so long." And remember that we are speaking not of a judicial complaint, but of an administrative complaint. There is no duty of precomplaint inquiry in EEOC proceedings as distinct from federal court actions (Fed.R.Civ.P. 11). Cada could have prepared an adequate administrative complaint within days of July 7.

██ We do not think equitable tolling should bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term. Cf. *EEOC v. O'Grady,* 857 F.2d 383, 392 (7th Cir.1988). It is, after all, an equitable doctrine. It gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations. Statutes of limitations are not

arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose. The statute of limitations is short in age discrimination cases as in most employment cases because delay in the bringing of suit runs up the employer's potential liability; every day is one more day of backpay entitlements. We should not trivialize the statute of limitations by promiscuous application of tolling doctrines. When we are speaking not of equitable estoppel but of equitable tolling, we are (to repeat) dealing with two innocent parties and in these circumstances the negligence of the party invoking the doctrine can tip the balance against its application—as it did, for example, in the *Irwin* case cited earlier.

It might seem that a rule of automatic extension would be much simpler to administer. The simplicity would be delusive. Inquiry would shift from how much time the plaintiff needed after he discovered the essential information bearing on his claim in order to prepare his complaint to how much information really was essential. Suppose that on the day the adverse personnel action occurred the plaintiff had 90 percent of the information he needed to be sure he had a colorable claim, and the other 10 percent came in the next day. Would this mean he had 301 days to file his administrative complaint? Or is 90 percent enough? Since it is rare that by the end of the day of the adverse action the plaintiff will have all the requisite information, the automatic-extension rule would extend the statute of limitations in virtually all cases, making the ostensibly fixed deadline illusory.

■■■ In most cases in which equitable tolling is invoked, the statute of limitations has run *before* the plaintiff obtained information essential to deciding whether he had a claim. This pattern in the cases recognizes implicitly that the statute of limitations is not automatically delayed by the time it takes to obtain such information, since as we have said that will usually be sometime after the claim arose.

When as here the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so. The presumption will be more easily rebuttable the nearer the date of obtaining the information is to the date at which the statutory period runs out. In this case the interval was eight months, huge in the circumstances. We hold that a plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information. Cada failed to do this.

■■■ The only string left on Cada's bow is the discovery rule, which pushes back the beginning of the limitations period. The rule is not applicable here. Cada's action on May 5 in going from the meeting with Becks—whom he knew to be his supervisor on the catalog project and to have been recently promoted—directly to the human resources office to pick up severance forms is compelling, as well as uncontested, evidence, which no rational jury would be entitled to discount, that he knew he had been fired. *Ricks* establishes that it is the date of firing or other adverse personnel action, not the date on which the action takes effect and the plaintiff is terminated, that—provided it is communicated to the employee, and it was here—is the date of accrual. If the plaintiff cannot within the statutory period gather the necessary information to prepare his complaint, he may be able to get more time under the equitable tolling doctrine, but we have just seen that Cada is not entitled to the benefit of that doctrine. His suit was time-barred. The judgment dismissing it is

AFFIRMED.