Nestor **CHAKONAS**, Plaintiff–Appellant,

v.

**CITY OF CHICAGO**, City of Chicago Police Department, Leroy Martin, in his official capacity, et al., Defendants–Appellees.

No. 93–3974.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1994.

Decided Dec. 22, 1994.

Dale D. Pierson, Brian C. Hlavin (argued), and Thomas J. Pleines, Baum, Sigman, Auerbach, Pierson & Neuman, Chicago, IL, for plaintiff–appellant.

Lawrence Rosenthal, Deputy County Counsel, Mardell Nereim, Benna R. Solomon, Stuart D. Fullerton (argued), and Susan S. Sher, Office of the Corp. Counsel, Appeals Div., Chicago, IL, for defendants–appellees.

Before CUDAHY, ESCHBACH and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Nestor Chakonas, a former district commander of the Chicago Police Department, sued the City of Chicago, the City of Chicago Police Department and various city officials

for the termination of his employment in violation of the Age Discrimination in Employment Act, 21 U.S.C. § 621 *et seq.* The district court dismissed his complaint for failure to file within the statutory period. In doing so, the district court rejected Chakonas's pleas of equitable estoppel and equitable tolling. Chakonas now appeals. Because we agree with the district court, we affirm the dismissal of his complaint.

## I.

Nestor Chakonas (Chakonas) is the former district commander of the Chicago Police Department. He worked in that capacity until August 29, 1991, when he retired at age sixty-three under the City's mandatory retirement policy. Nearly two years later, on August 20, 1993, Chakonas filed a complaint with the Equal Employment Opportunity Commission (EEOC). He asserted that the City's mandatory retirement policy violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*

The City's mandatory retirement policy has been in a state of flux for the past few years. From 1935 until 1983, the City required Chicago police officers in classified civil service positions to retire at age sixty-three. Chicago, Ill., Municipal Code ch. 25, § 37 (1935). Chakonas, who held the exempt rank position of district commander, was not covered by this original policy. The City soon amended its original policy, however. In response to the Supreme Court's holding that municipal workers were covered by the ADEA, *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), the City changed the original policy to raise the mandatory retirement age from sixty-three to seventy. Chicago, Ill., Municipal Code ch. 25, § 37 (1983). Although this second policy stayed in effect for a few years, the City soon changed it again. Congress amended the ADEA in 1986 to create an exception enabling municipalities to terminate police officers and firefighters in accordance with the local law that had been in effect on March 3, 1983 (the day after the Supreme Court's decision in *Wyoming* ). 29 U.S.C. § 623(j) (1986). The City therefore changed its policy to reinstate the mandatory sixty-three-

year retirement age. Chicago, Ill., Municipal Code ch. 25, § 37 (1988). This new policy applied the mandatory retirement age to *all officers,* however (including Chakonas).

The new policy did not go unchallenged. Some firefighters who had not been in civil service positions in 1983 sued the City. They claimed that the 1988 changes violated the ADEA because they applied to a broader class of employees than had the original policy (given that the changes applied to previously excluded exempt rank employees). The firefighters prevailed. In *Roche v. City of Chicago,* 818 F.Supp. 233 (N.D.Ill.1993), *aff'd,* 24 F.3d 882 (7th Cir.1994), the district court held that the 1988 policy violated the ADEA because it expanded the scope of the mandatory retirement policy that existed in 1983.

Chakonas now seeks to benefit from *Roche.* Like the firefighters, he was an exempt rank employee in 1983. Again like the firefighters, the 1988 policy forced him into early retirement at the age of sixty-three. He therefore occupies a position similar to that of the *Roche* plaintiffs. Unlike the *Roche* plaintiffs, however, he did not file a complaint with the EEOC within 300 days of the alleged discriminatory practice.

On these facts, the district court held Chakonas's claim time-barred. In doing so, that court refused to invoke the doctrines of equitable tolling and equitable estoppel to modify the ADEA's statutory filing requirement. Chakonas appeals, suggesting that the district court's failure to look to equity was error. We affirm.

## II.

We review the decision to dismiss Chakonas's claim *de novo,* accepting as true the complaint's well-pleaded factual allegations and drawing all reasonable inferences in Chakonas's favor. *Gould v. Artisoft, Inc.,* 1 F.3d 544, 548 (7th Cir.1993). If a plaintiff has admitted facts showing that he is not entitled to recovery under the theory he advances, then dismissal of the complaint was proper. *Early v. Bankers Life and Cas. Co.,* 959 F.2d 75, 79 (7th Cir.1992).

■ It is undisputed that Chakonas's claim was not filed within the required statutory period.[1] The ADEA requires potential plaintiffs to file a complaint with the EEOC within 300 days of the alleged discriminatory practice. 29 U.S.C. § 626(d)(2); *see also Hamilton v. Komatsu Dresser Industries, Inc.*, 964 F.2d 600, 603 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 324, 121 L.Ed.2d 244 (1992). Yet Chakonas did not do so. Instead, he filed with the EEOC on August 20, 1993, nearly two years after the termination of his employment. Ordinarily, this failure to file would be sufficient to bar his suit. *Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1225 (7th Cir.1991) (quoting *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 410 (7th Cir.1984)).

■ The statutory filing period is not, however, absolute. Instead, the 300–day limitation is subject to equitable modification. *Hamilton,* 964 F.2d at 605. Either equitable tolling or equitable estoppel can work to relax a statutory filing period. *See generally Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990). Chakonas argues that both doctrines plausibly apply to his case.

The propriety of dismissal therefore turns on whether the district court properly concluded that the ADEA's statutory filing requirement was not subject to equitable modification. That court concluded that neither of the recognized equitable exceptions to the filing requirement applied to save Chakonas's claim. The doctrine of equitable estoppel did not apply because the City took no steps to prevent Chakonas from timely filing. Similarly, the doctrine of equitable tolling had no application because a reasonable person in Chakonas's position would have known that he had been forced into retirement in possible violation of the ADEA.

Chakonas argues, however, that the district court erred. On appeal, he asserts that the court ought to have applied the doctrine of equitable tolling because the *Roche* decision constitutes information vital to the existence of his claim; because he was not aware that the City's policy was illegal until *Roche* was handed down, he claims that he should not be held accountable for his failure to file with the EEOC within the statutory period. Second, Chakonas asserts that he was entitled to benefit from the doctrine of equitable estoppel. Application of this doctrine is appropriate, claims Chakonas, because the City's anti-discrimination policies provided a false assurance that the City's actions were taken in accordance with the law. We do not find either of his arguments persuasive.[2]

### A. *Equitable Tolling*

■ The doctrine of equitable tolling should not be applied here because Chakonas should have been aware that he had a possible claim under the ADEA well before *Roche* was handed down. Equitable tolling is appropriate when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim. *Cada,* 920 F.2d at 451. To determine whether a plaintiff in fact lacked vital information, a court should ask whether a reasonable person in the plaintiff's position would have been aware that he had been fired in *possible* violation of the ADEA. *Id.* If a reasonable person would have been aware, but the plaintiff was not, resort to equitable tolling is inappropriate.

---

1. The actual "discriminatory practice" seems to have been the subject of dispute in the trial court. The City asserted that any alleged discrimination occurred when the City's policy went into effect on January 13, 1988. Chakonas, on the other hand, contended that the date of his termination, August 29, 1991, was the date of the discriminatory practice. We will assume that the discriminatory practice occurred on the date of termination. We do so only because the City has accepted this date for the purposes of appeal. We express no opinion as to the relative merit of either date, however.

2. The City argues that we should not address the merits of Chakonas's claims for equitable tolling and estoppel because they are not reflected in the allegations of his complaint, and he has not amended his complaint. We decline to rule on these grounds. The City raised these issues in the district court by moving to dismiss given an untimely filing. The district court therefore ruled on them. The reason that Chakonas never amended his complaint is because the district court dismissed it.

*Cada* teaches that reasonable people need only be aware of the possibility of an ADEA violation. There, we noted:

> The qualification "possible" is important. If a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run—for even after judgment, there is no certainty.

920 F.2d at 451. This factor controls in the instant case. By seeking to wait to file until *Roche* had been handed down, Chakonas sought certainty. The law does not, however, permit plaintiffs such a luxury. A plaintiff who is aware of his injury is not allowed to wait until the time that he becomes aware of its unlawful nature. *See Teumer v. General Motors Corp.,* 34 F.3d 542, 550 (7th Cir. 1994).

Chakonas knew that he had been forced to retire under the City's new policy because he reached age sixty-three. This is all the information that the *Roche* plaintiffs possessed when they filed to protect their rights under the ADEA. We agree with the district court that this is all the information that could be considered "vital" to a plaintiff's knowledge of a "possible" violation.

This result is hardly altered by the fact that Chakonas, as a police officer, might possess a respect for the law (the retirement policy was a municipal ordinance) or believe in the City's anti-discrimination policies. Chakonas's subjective philosophy is not relevant to the reasonableness determination occasioned by an equitable tolling inquiry. Neither do we find plausible any assertion that testing a law's validity is tantamount to a showing of disrespect for that law. Chakonas was aware of facts sufficient to suggest a possible violation of the ADEA. This is sufficient to overcome a claim of equitable tolling.

### B. *Equitable Estoppel*

Equitable estoppel is similarly inappropriate. This doctrine, quite distinct from equitable tolling, comes into play when a defendant takes active steps to prevent a plaintiff from suing on time. *Cada,* 920 F.2d at 450. Here, the City has done nothing to induce Chakonas to sleep on his rights.

As indicated, Chakonas was aware of all of the facts that would form the basis of any claim. He knew that he had been forced to retire and he knew that the reason for his retirement was the changed City policy. The City did nothing to conceal this information from him. Neither did the City otherwise act to his prejudice. This case involves no misrepresentations or other conduct that would in some way prevent Chakonas from filing. *See generally, Cada,* 920 F.2d at 451.

Chakonas argues, however, that the City's posted anti-discrimination policies provided him with a false assurance that it acted in accordance with the law. Whether or not this is the case, it provides no ground for equitable estoppel. To begin with, anti-discrimination policies provide no guarantee that discrimination will not in fact occur. Although a policy might unequivocally denounce or proscribe discrimination, such a statement hardly amounts to an assurance that discrimination has been eradicated (otherwise, why the policy?). Instead, these policies function as stated goals or benchmarks to be attained. They serve, at most, the dual function of providing an official stricture against discrimination and assuring the public that, *if* discrimination is brought to the City's attention, the City will act to eliminate it.

Further, and more importantly, however, accepting Chakonas's argument would effectively deprive the City (or anyone else with an anti-discrimination policy) of the ability to assert a statute of limitations defense. *See Cada,* 920 F.2d at 421. Finding the bare existence of a policy against discrimination as a ground adequate to invoke equitable estoppel would guarantee the disappearance of these policies. This we refuse to do. For these reasons, any plea for equitable estoppel must fail.

### III.

Chakonas failed to file his ADEA claim within the required statutory period. He has not alleged grounds sufficient to invoke either the doctrine of equitable tolling or that of equitable estoppel. Therefore, the district

court properly dismissed his complaint as time-barred.

Affirmed.