Charles L. DRING, Appellant,

v.

McDONNELL DOUGLAS CORPORATION, doing business as McDonnell Douglas Missile Systems, Appellee.

No. 94–2992.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1995.

Decided July 5, 1995.

David Danis, St. Louis, MO, argued, for appellant.

Thomas C. Walsh, St. Louis, MO, argued (Timothy A. Garnett and Elizabeth A. Bousquette, on brief), for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

Charles Dring (Dring) appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Missouri, granting summary judgment in favor of defendant McDonnell Douglas Corporation (MDC) on Dring's claims of age discrimination. For reversal, Dring argues the district court erred in finding: (1) his administrative complaint was untimely, and (2) he failed to make out a prima facie case of age discrimination. For the reasons discussed below, we affirm.

I.

In mid–1990, in response to a negative economic situation, MDC began a series of "reductions-in-force" in its corporate structure. Dring was one of approximately 550

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

MDC employees who were laid off as part of a reduction-in-force (RIF) that began in July 1990, and continued throughout the beginning of 1991 at the McDonnell Douglas Missile Systems Co. (MDMSC) in St. Louis, Missouri. Dring began his employment with MDC in 1963 as a planner in the supply support area. He joined MDMSC in 1980 and held a supervisory position until 1985. At the time of his layoff, Dring was a principal specialist of logistics in a department of the Harpoon Program Customer Support Division.

On July 18, 1990, Dring was informed by his immediate supervisor, Terry Allen, and division manager, Ron Moon, that he was being laid off. At the time of this notification, Dring was 54 years old. His layoff, however, was delayed until April 7, 1991, Dring's birthday, so that his early retirement benefits could vest. As required by federal and state law, MDC gave Dring formal notice of his layoff on February 7, 1991, sixty (60) days before its effective date. On the same day that formal notice of termination was given, Allen asked Dring to train another employee who was transferring into the Harpoon program, Edward Kloss, age 38, on his primary job responsibilities. Though this employee was never trained, Dring did train two other employees, ages 48 and 47, before he left the company.

On May 23, 1991, Dring filed an Equal Employment Opportunity Commission (EEOC) charge alleging age discrimination with regard to his layoff. In his EEOC charge, Dring specifically stated that he believed his layoff was in retaliation for protesting an "unfair" performance appraisal from March 1990 through July 1990. He further stated that he believed the negative performance appraisal was the product of age discrimination. Dring in fact had previously initiated an unsuccessful challenge to the unfavorable evaluation through an internal grievance procedure. On April 30, 1992, Dring brought this suit under the Age Discrimination in Employment Act (ADEA) and the Missouri Human Rights Act (MHRA), alleging age discrimination. MDC filed a motion for summary judgment, contending that Dring's claims should be dismissed be-cause he did not file an administrative charge with the EEOC within 300 days of his layoff notification. Further, MDC argued that Dring had failed to make out a prima facie case of age discrimination. The district court entered an order granting MDC's motion for summary judgment. *Dring v. McDonnell Douglas Corp.*, No. 4:92CV838 (E.D.Mo. Mar. 23, 1994) (Memorandum and Order). The district court ruled that Dring's EEOC charge was untimely and, alternatively, that Dring failed to establish a prima facie case. This appeal followed.

II.

■■■ As a threshold matter, we consider our appellate jurisdiction in the present case. MDC has argued that Dring's notice of appeal from the district court's order granting summary judgment in favor of MDC was untimely, and that we therefore lack jurisdiction to review this case. MDC contends that the district court's order was issued on March 23, 1994, and that the notice of appeal from that order was not filed until April 25, 1994, 33 days after the date of the district court's order. Federal Rule of Appellate Procedure 4(a)(1) provides in part that a notice of appeal must be filed "within 30 days after the date of entry of the judgment or order appealed from." Federal Rule of Appellate Procedure 4(a)(7) further provides that "[a] judgment or order is entered within the meaning of this Rule 4(a) when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure." *See Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1356 (11th Cir.1994). In the present case, the entry of judgment in accordance with these rules did not occur until March 25, 1994, two days after the issuance of the district court's order granting summary judgment. *See* Appellant's Appendix at 5 (Clerk's docket entries). Thirty days from that date would be April 24, 1994, which was a Sunday. Because the thirtieth day was a Sunday, Federal Rule of Civil Procedure 6(a) requires that the filing party be given one extra day to file. Consequently, the notice of appeal, filed on April 25, 1994,

was timely filed. Therefore, we are satisfied we have appellate jurisdiction.[2]

### III.

■ The next threshold issue which we must consider is the statutory requirement that ADEA plaintiffs timely file a charge with the EEOC. Specifically, federal law requires that, before a plaintiff may sue an employer under the ADEA, he or she must file a charge with the EEOC within 180 days of the "alleged unlawful practice." 29 U.S.C. § 626(d). Because Missouri also has a law prohibiting age discrimination, the time to file a charge with the EEOC is extended to 300 days. *Id.* This administrative deadline is not a jurisdictional prerequisite; rather, it is treated like a statute of limitations. *Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *DeBrunner v. Midway Equip. Co.,* 803 F.2d 950, 952 (8th Cir.1986) (*DeBrunner*). If a plaintiff fails to file a timely charge, the lawsuit is barred unless he or she can demonstrate that the limitations period is subject to equitable modification such as waiver, estoppel, or tolling. *Anderson v. Unisys Corp.,* 47 F.3d 302, 306 (8th Cir.1994) (*Anderson*); *Heideman v. PFL,* 904 F.2d 1262, 1265 (8th Cir.1990) (*Heideman*), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991).

### A.

Dring argues that July 18, 1990, the date of his layoff notification, is not the proper date from which to begin the 300-day period. He contends that the proper date is February 7, 1991, the date of his formal notice, because, on that day, his supervisor told him to train a 38-year-old employee in his three principal areas of responsibility. Dring maintains that it was at this point, and not before, that he was "able to tie everything together and determine in his mind that his layoff was because of age discrimination."

Brief for Appellant at 17. Dring argues that he had no way of knowing that the decision to terminate his employment was based upon age discrimination until he learned on February 7, 1991, that his job duties were going to continue and that a younger employee would perform them. Thus, he believes that the 300-day period for filing an EEOC charge should be considered equitably tolled until that date. Dring maintains it was the deliberate design of MDC to convince laid off employees that the termination decision was based solely on economic necessity, and not age.

MDC argues that the date of the notification of the layoff, July 18, 1990, should be the date from which we calculate the EEOC filing period. MDC contends that the charge, filed 309 days later, on May 23, 1991, would therefore be untimely. It argues that the principle of equitable tolling cannot be used by a plaintiff to extend the time for filing an EEOC charge simply because he or she had failed to put "two and two together" and figure out the true animus behind the adverse employment action. MDC argues that only positive misconduct on the part of the employer, designed to conceal its true motivations, will allow a plaintiff to invoke the doctrine of equitable tolling. MDC maintains that there is absolutely no evidence of any such misconduct on its part, and, therefore, Dring's failure to timely file his EEOC charge bars the maintenance of the present action.

### B.

■ To resolve this statute of limitations question, we must first determine the date on which the statute of limitations began to run. Such date is referred to as the accrual date. In *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (*Ricks*), the Supreme Court considered, in a Title VII context,

---

**2.** After the district court's ruling, Dring filed a "Motion for Reconsideration" on April 11, 1994. Applying the appropriate time computation method of Fed.R. of Civ.P. 6(a), this motion was filed more than 10 days after the entry of judgment on March 25, 1994. Thus, the motion did not toll the time for the filing of a notice of appeal. *See* Fed.R.App.P. 4(a). Further, the de-

nial of this motion on August 16, 1994, is not appropriately before us because Dring did not amend his original notice of appeal to include this subsequent order, *see* Fed.R.App.P. 3(c), and his erroneously labeled "Notice of Appeal" filed August 17, 1994, was in reality a request for additional time to file an appellate brief. Appellee's Appendix at 58.

**1328**

whether a cause of action for discrimination accrued when the plaintiff, a college professor, was denied tenure, allegedly on discriminatory grounds, or when his employment contract expired a year later. The Court held that the statute began to run once the denial of tenure, the allegedly unlawful act, was communicated to the plaintiff. *Id.* at 258, 101 S.Ct. at 504. In the context of an ADEA action, our court, following *Ricks,* has accordingly held that the limitations period begins to run when the plaintiff receives notice of a termination decision. *Wilson v. Westinghouse Elec. Corp.,* 838 F.2d 286, 288 (8th Cir.1988). Thus, the accrual date is simply the date on which the adverse employment action is communicated to the plaintiff. *See Hamilton v. 1st Source Bank,* 928 F.2d 86, 88–89 (4th Cir.1990) ("To the extent that notice enters the analysis, it is notice of the employer's actions, not the notice of a discriminatory effect or motivation that establishes the commencement of the pertinent filing period."); *see also Hulsey v. Kmart,* 43 F.3d 555, 557 (10th Cir.1994); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1386 (3d Cir.1994) (*Oshiver*). In the present case, it is undisputed that MDC told Dring on July 18, 1990, that he would be laid off effective April 7, 1991. Therefore, because Dring's termination is the alleged adverse employment action, the statute of limitations began to run on July 18, 1990, subject only to the possibility of equitable modification, which we next consider.

At the outset, it is important to distinguish between equitable tolling and equitable estoppel. *Cf. Anderson,* 47 F.3d at 307 n. 11; *Hamilton v. West,* 30 F.3d 992, 994 (8th Cir.1994). Frequently parties in employment discrimination litigation, and sometimes courts as well, blur these two related yet distinct doctrines. The Seventh Circuit has recently clarified the distinctions between these two equitable devices. *See Chakonas v. City of Chicago,* 42 F.3d 1132, 1135–37 (7th Cir.1994) (*Chakonas*); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450–453 (7th Cir.1990) (*Cada*), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). Because we find these cases instructive and feel that some of our prior cases lack the requisite clarity, we set out the conceptual framework for analyzing the interplay between the limitations period for the filing of EEOC charges in ADEA cases and the equitable doctrines which might modify it.

In *Chakonas,* the court held that "[e]quitable tolling is appropriate when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim." 42 F.3d at 1135. This understanding of the doctrine of equitable tolling has its roots in the discovery rule long-applied to fraud cases. *See Holmberg v. Armbrecht,* 327 U.S. 392, 396–97, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946) (*Holmberg*). Recently, the Supreme Court had occasion to restate the rationale underlying this rule with specific reference to the doctrine of equitable tolling: "'[W]here the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, *though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) (*Gilbertson*) (emphasis added) (*quoting Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1875) (*Bailey*)). Our court has occasionally used the term "equitable tolling" as a blanket phrase which included equitable estoppel as well. For example, in *DeBrunner,* we stated that "[e]quitable tolling arises upon some positive misconduct by the party against whom it is asserted." 803 F.2d at 952 (citation omitted). Addressing a similar statement in an earlier Seventh Circuit decision, *see Stark v. Dynascan Corp.,* 902 F.2d 549, 551 (7th Cir.1990) ("[T]o invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him."), the Seventh Circuit explained that such proof is "what plaintiff must show if he is trying to invoke equitable estoppel." *Cada,* 920 F.2d at 452. In other words, as the Supreme Court's opinions in *Bailey, Holmberg,* and *Gilbertson* have discussed the principles of equitable tolling, it is evident that the doctrine does not require any misconduct on the part of the defendant.

*See Rhodes v. Guiberson Oil Tools Div.,* 927 F.2d 876, 878 (5th Cir.) ("Equitable tolling focuses on the employee's ignorance, not on any possible misconduct by the employer."), *cert. denied,* 502 U.S. 868, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991); *Cada,* 920 F.2d at 452 ("*Holmberg* makes clear that equitable tolling does not require any conduct by the defendant.").

■ The *Chakonas* court further provided an objective test which should be applied to decide whether a particular plaintiff should be granted an extension of the applicable limitations period under the doctrine of equitable tolling: "To determine whether a plaintiff in fact lacked vital information, a court should ask whether a reasonable person in the plaintiff's position would have been aware that he had been fired in possible violation of the ADEA." 42 F.3d at 1135. As the court in *Cada* first noted, the qualification "possible" is significant because "if a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run" 920 F.2d at 451. Thus, we hold that, when a reasonable person in the plaintiff's situation would not be expected to know of the existence of a possible ADEA violation, this excusable ignorance may provide the basis for the proper invocation of the doctrine of equitable tolling.

■ In the context of statutes of limitation, the doctrine of equitable estoppel, on the other hand, "comes into play when a defendant takes active steps to prevent a plaintiff from suing on time." *Chakonas,* 42 F.3d at 1136, *citing Cada,* 920 F.2d at 450; *see Garfield v. J.C. Nichols Real Estate,* 57 F.3d 662, 666 (8th Cir.1995) ("The equitable estoppel inquiry focuses on the employer/defendant's conduct."). As our court has repeatedly stated, the EEOC limitations period will not be modified on the basis of equitable estoppel unless "the employee's failure to file in timely fashion is the consequence of either a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Kriegesmann v. Barry–Wehmiller Co.,* 739 F.2d 357,

358–59 (8th Cir.) (Title VII context) (*quoting Price v. Litton Business Sys. Inc.,* 694 F.2d 963, 965 (4th Cir.1982)), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). This equitable doctrine presupposes the plaintiff's knowledge of the facts underlying his or her cause of action. *Skyberg v. United Food & Comm. Workers Int'l Union,* 5 F.3d 297, 302 (8th Cir.1993); *Cada,* 920 F.2d at 451; *see Dillman v. Combustion Eng'g,* 784 F.2d 57, 61 (2d Cir.1986) ("[E]quitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit.") (quotation marks and citation omitted).

■ The plaintiff in *Cada* attempted to employ improperly the doctrine of equitable estoppel. In that case, the plaintiff tried to bring himself within the doctrine by contending that the company's reorganization was merely a ruse to conceal a plan to fire him because of his age. As the Seventh Circuit noted, "[t]his [approach] merges the substantive wrong with the tolling doctrine." *Cada,* 920 F.2d at 451. In other words, the plaintiff sought to have the court adopt a rule which would provide that a defendant should be equitably estopped from asserting the limitations period any time the announcement of an adverse employment action was not accompanied by a simultaneous revelation of the true motivation behind that adverse employment action. In *Heideman,* we rejected just such an argument: "Whether or not an employer tells its employee the true reason for the adverse employment decision is not the standard." 904 F.2d at 1266. The Seventh Circuit in *Cada* rightly concluded that the adoption of such an approach to the application of the doctrine of equitable estoppel would "eliminate the statute of limitations in age discrimination cases." 920 F.2d at 451. Thus, when a plaintiff is aware of the existence of a possible ADEA violation but is lulled or tricked into letting the EEOC filing deadline pass because of some employer misconduct above and beyond the wrongdoing upon which the plaintiff's claim is founded, the appropriate doctrine to invoke would be equitable estoppel.[3]

---

**3.** We find support for this understanding of the

doctrine of equitable estoppel as it relates to the

In the present case, Dring, much like the plaintiff in *Cada*, argues that MDC attempted to conceal the true motivation behind his termination in an attempt to prevent him from exercising his rights. He makes this argument in order to demonstrate that February 7, 1991, the earliest date on which he claims he was "able to tie everything together," should be the date on which the statute begins to run, i.e., the accrual date. However, as noted above, the accrual date is merely the date that the adverse employment action is communicated to the plaintiff. *See Oshiver*, 38 F.3d at 1386 (indicating it is awareness of the actual injury, not awareness of the legal wrong, which triggers the running of the statute). Thus, Dring essentially argues that the running of the statute of limitations should be tolled from the accrual date of July 18, 1990, until February 7, 1991, the date he claims that he realized his injury was due to MDC's wrongdoing.[4] *See Cada*, 920 F.2d at 451. Dring has not argued that MDC attempted to delay his filing of an EEOC charge by any misconduct other than MDC's failure to reveal the fact that his termination was based on age. Thus, if Dring is to succeed, it must be on the basis of equitable tolling.

### C.

The application of equitable principles is, in essence, relief from the harshness of mechanical rules. It would, therefore, be inconsistent with the concept of equity to lay down hard and fast rules governing when such relief would be available. A case-by-case analysis, the "balancing of the equities," is thus the usual approach when a party seeks to be excused from the indiscriminate sweep of a rigid statute. Few statutes are less forgiving than those of limitation, but this severity comes with good reason. As Judge Posner stated, "[s]tatutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." *Cada*, 920 F.2d at 453. Hence, while it is inherently difficult to predict when resort to the saving grace of equitable modification is appropriate, it is important to remember that such relief is an exception to the rule, and should therefore be used only in exceptional circumstances.

In the present case, Dring argues that he did not form a belief that he had been discriminated against on the basis of his age until February 7, 1991. However, he claimed in his EEOC affidavit that he believed he was terminated in retaliation for his protest of a negative job evaluation, a protest which was itself based on a claim of age discrimination. According to his affidavit, Dring met with Dr. Robert Portnoy, an MDC ombudsman, on July 3, 1990, to discuss his negative appraisal. He further explained: "In questions that I prepared for Dr. Portnoy I stated that I felt my treatment was discriminatory because of my age because I was the oldest person in Terry's [Terry Allen, his supervisor] section." Appellant's Appendix at 101. We think it would be inconsistent with the exceptional nature of equitable modification to apply the doctrine of equitable tolling to save an otherwise untimely EEOC charge, where, as here, the plaintiff, just fifteen days prior to termination, argued to a

---

application of statutes of limitation in the Supreme Court's opinion in *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). In that case, the Court employed the doctrine of equitable estoppel in a Federal Employers' Liability Act (FELA) action to disallow the defendant's assertion of the relevant statute of limitations as a bar to the maintenance of the plaintiff's untimely filed complaint. The Court held that the case was improperly dismissed below because the district court failed to consider the plaintiff's allegation that an agent of his employer misrepresented the amount of time the plaintiff had to commence his lawsuit. *Id.* at 235, 79 S.Ct. at 763. There was no dispute as to the existence of a cause of action; rather, the dispute focused on whether the defendant should be able to take advantage of his misleading statement upon which the plaintiff had detrimentally relied.

4. In *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir.1990), the Seventh Circuit concludes that equitable tolling should not "bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term." We need not, however, consider this issue because, as discussed subsequently in this opinion, we conclude that Dring is not entitled to equitable tolling.

 

company ombudsman that he was the victim of age discrimination. Although Dring now claims that his belief that he was terminated because of his age did not form until he was told to train the younger employee, his earlier age discrimination grievance belies his belated assertion of ignorance. Under these circumstances, Dring's discovery of the fact that another younger employee would be taking over some of his duties was not the type of vital information without which he could not recognize the existence of a possible ADEA violation.

■ Moreover, we cannot turn a blind eye to the fact that, from the date Dring claims he was able to determine his termination was based on age, February 7, 1991, Dring still had over three months in which to file a timely EEOC charge within the limitations period that began to run on July 18, 1990. By his own admission in the EEOC affidavit, MDC's request that he train a younger employee was not his first encounter with what he perceived to be evidence of age discrimination. In fact, he claims that request allowed him to tie everything together and form the belief that his termination was based on age discrimination. Yet, he did not file an EEOC charge for over three months. This delay, which was in no way excusable, strongly weighs against Dring's request for equitable modification of the limitations period. Under the facts and circumstances of this case, we therefore hold that Dring's EEOC charge, filed 309 days after his notice of layoff, was not subject to equitable tolling, and was thus untimely.[5]

### IV.

Because we find Dring's failure to file a timely EEOC charge to be dispositive, we need not consider whether Dring failed to make a prima facie case of age discrimina-

tion. For the reasons discussed above, the judgment of the district court is affirmed.

---

5. Dring has also argued he suffered a continuing violation which allows extension of the administrative filing period. He bases this argument on the fact that it was not until February 7, 1991, that he was told to train a younger employee. However, he fails to recognize that the adverse employment action, if any, was his termination. If the termination was motivated by age, it was unlawful at the moment it occurred. The fact that Dring was told to train a younger employee may indeed be evidence from which it can be inferred that Dring's termination was unlawful, but it is not the kind of employer conduct which constitutes a continuing violation.