# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3041

_____

Lisa A. Renshaw Nygren,          *
                                        *
          Appellant,          *
                                        *   Appeal from the United States
     v.                        *   District Court for the
                                        *   District of Minnesota.
John Ashcroft, United States    *    [UNPUBLISHED]
Attorney General,            *
                                        *
          Appellee.           *

_____

Submitted: May 14, 2004
Filed: August 24, 2004

_____

Before WOLLMAN, HAMILTON,[1] and BYE, Circuit Judges.

_____

PER CURIAM.

Correctional officer Lisa Renshaw Nygren (Nygren) brought suit against her employer, the Federal Correctional Institute at Sandstone, Minnesota (FCI-Sandstone), alleging that she had been sexually harassed by a co-worker. The district court[2] granted summary judgment for FCI-Sandstone, concluding (1) that Nygren

_____

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the Fourth Circuit, sitting by designation.

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

failed to comply with an Equal Employment Opportunity Commission (EEOC) regulation mandating that federal employees initiate contact with an EEO counselor within 45 days of alleged discrimination, and (2) that Nygren was not entitled to equitable tolling of the limitation. We affirm.

## I.

We recite the facts in the light most favorable to Nygren, who commenced a twelve-month probationary period of employment with FCI-Sandstone in June 1999. As part of her training, Nygren selected William Gaede as her employee mentor. Gaede was initially helpful, but began making sexually offensive comments and gestures to Nygren.[3] This conduct continued through early 2000 and culminated on June 26, 2000, when Gaede approached Nygren from behind and ran his finger between her legs.

Nygren initially reported Gaede's behavior to Lieutenant Polly King on July 8, 2000. King furnished Nygren with a copy of FCI-Sandstone's written policy on sexual harassment,[4] a copy of which Nygren had received upon her arrival at FCI-Sandstone and during annual training on workplace discrimination. King also

---

[3]Among other things, Gaede inquired about Nygren's sex life and would mention that he had an erection. Eventually, he began moving from behind his desk with an erection visible beneath his pants and would point to and make comments about it.

[4]The policy tells the reader that "the employee may seek relief by either notifying the contact person for the Sexual Harassment Prevention Plan, pursuing the EEO Complaint process, or using the Negotiated Grievance process . . . or the Agency Grievance Procedure." Program Statement 3717.17. It further states that "[e]mployees should be informed that if they choose to use the EEO Complaint process, they must do so within 45 days of the action(s) of which they are complaining." Id. (emphasis in original).

reported Nygren's complaints to higher management, an event that ultimately triggered a disciplinary investigation by the Bureau of Prisons' Office of Internal Affairs (OIA).

On July 13, 2000, Nygren met with EEO counselor Thomas Gafkjen. She did not complete a written request for counseling during the meeting, but informed Gafkjen that if the "internal investigation did not resolve the issue, [she] would be interested in pursuing an EEO complaint." Although it is Gafkjen's practice to inform employees that they must meet with him again within 30 days to pursue EEO remedies, he did not provide Nygren with written information during the meeting or inform her of any deadline for filing an EEO complaint.

Nygren met with several FCI-Sandstone officials during August. She prepared a memorandum on August 10, 2000, for the Special Investigative Supervisor which states: "I have an understanding with Mr. Gaede that his inappropriate behavior will not be tolerated any further. He understands this and I have not had any more problems at this time. There is also an understanding that if this becomes a problem again, I will take further action." This same sentiment is reflected in the Associate Warden's notes of her meeting with Nygren on August 23, 2000: "I then asked Ms.[Nygren] three separate times if she felt that I needed to take further action and she stated that she did not."

On August 24, 2000, Nygren met with Warden T. C. Peterson, who Nygren contends questioned her about having a sexual relationship with Gaede, told her that she was "flirtatious," and insinuated that she had somehow invited Gaede's misbehavior. Warden Peterson nevertheless involved the OIA, and on September 26, 2000, Nygren submitted an affidavit for the investigation, which stated in part that "Gaede has not engaged in any unprofessional or inappropriate behavior in my presence following the incident in his office when he placed a finger between my

legs." The affidavit also detailed Nygren's conversation with Warden Peterson and her belief that Peterson's statements were inappropriate.

The investigation concluded on October 23, 2000, with a finding that there was "insufficient corroborating evidence" that Gaede had engaged in unprofessional conduct. Nygren did not learn of this outcome until December 10, 2000. She subsequently informed both King and the Federal Women's Program Manager, Debra Helmbrecht, that she wished to file an EEO complaint. Helmbrecht told Nygren that she was an EEO Counselor, and several weeks later, on February 12, 2001, helped Nygren complete a written request for EEO counseling. Nygren later discovered that Helmbrecht was not an EEO counselor, so she returned to see Gafkjen on March 6, 2001, to file an EEO complaint.

## II.

"Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Angelo Iafrate Const., LLC v. Potashnick Const., Inc., 370 F.3d 715, 719 (8th Cir. 2004). We consider the decision to grant summary judgment de novo, applying the same standard as the district court. Id.

Federal employees who wish to sue the United States for employment discrimination must exhaust available administrative remedies. See Bailey v. United States Postal Serv., 208 F.3d 652, 654 (8th Cir. 2000). Among them is an EEOC regulation mandating that the aggrieved employee "initiate contact with a [EEO] Counselor" within 45 days of the alleged discrimination in order to attempt an informal resolution. 29 C.F.R. § 1614.105(a)(1). The regulation does not define "initiate contact," see Bailey, 208 F.3d at 654 n.2, but the EEOC has issued a number of decisions that interpret "initiate contact" to require that the employee "contact an agency official logically connected to the EEO process and exhibit an intent to begin

-4-

the EEO process." Allen v. Runyon, Doc. No. 5950933, 1996 WL 391224 at *3 (EEOC July 9, 1996); Pauling v. Secretary of the Dep't of Interior, 960 F. Supp. 793, 803 (S.D.N.Y. 1997) (collecting decisions). We defer to this interpretation, which neither party challenges. See Auer v. Robbins, 519 U.S. 452, 461 (1997) (agency interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with the regulation.").

Although Nygren contacted someone logically connected with the EEO process[5] within 45 days of the June 26, 2000, assault, she did not exhibit an intent to begin the EEO process. She did not complete a written request for counseling during her initial meeting with Gafkjen or otherwise seek to file a complaint, see Bailey, 208 F.3d at 654, and her statements to Gafkjen and other FCI-Sandstone officials indicate that she was not interested in pursuing the matter unless Gaede's conduct resumed.

Nygren nevertheless argues that her claim is timely in light of the Supreme Court's decision in Nat'l RR Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Morgan held that a Title VII hostile work environment claim is timely when "an act contributing to the claim occurs within the filing period" id. at 117, a rule that we have applied to EEOC regulatory time limits. See Jensen v. Henderson, 315 F.3d 854, 856 (8th Cir. 2002). Nygren suggests that events subsequent to the June 26 assault – including Warden Peterson's comments on August 24, 2000, and what she characterizes as the inadequate response to her complaints – form part of a single, actionable hostile environment that existed within 45 days of her later attempts to initiate EEO proceedings. We disagree. Nygren's September 26, 2000, memo confirms that Gaede's misbehavior had ceased, which was precisely the relief requested by Nygren. We therefore conclude that by waiting until March of 2001 to

[5]Nygren contacted Gafkjen, an EEO counselor, but the contact person can include a supervisor. See Buckli v. Caldera, Doc. No. 5970223, 1998 WL 1944318 at *2 (EEOC Oct. 8, 1998).

file a complaint, she failed to initiate contact with an EEO counselor within 45 days of the allegedly discriminatory conduct.

Nygren's final contention is that the 45-day limitation should not apply under the doctrines of equitable tolling and equitable estoppel.[6] Equitable tolling is appropriate in cases of excusable ignorance, where "'the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of [her] claim.'" Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1999) (quoting Chakonas v. City of Chicago, 42 F.3d 1132, 1135-37 (7th Cir. 1994)). The failure to file must be truly beyond the employee's control. The employee who fails to timely file despite general knowledge of her right to avoid workplace discrimination and a suspicion that this right has been violated is not entitled to tolling. See Briley v. Carlin, 172 F.3d 567, 570 (8th Cir. 1999) (citation omitted); Dring, 58 F.3d at 1329 (identifying test as "'whether a reasonable person in the plaintiff's situation would have been aware that he had been fired in possible violation of [discrimination laws].'" (citation omitted)). Similarly, equitable estoppel operates to prevent employees from being "lulled or tricked into letting the EEOC filing deadline pass . . . ." Dring, 58 F.3d at 1329. The doctrine applies if "the employee's failure to file in timely fashion is the consequence of either a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." Id. (citations and internal quotation marks omitted). We conclude that neither doctrine applies here.

Based on her conduct and statements, Nygren knew that she had a right to be free from workplace discrimination and was sufficiently aware of that right to contact an EEO counselor and prison management about the matter. She obviously knew

_____

[6]The EEOC may extend the filing deadline if the employee shows that "she was not notified of the time limits and was not otherwise aware of them . . . ." 29 C.F.R. § 1614.105(a)(2).

whom to contact, and her statements to Gafkjen clearly show that she also knew of her right to file an EEO complaint. Furthermore, she had at least constructive knowledge of EEO deadlines through the written policy she received both from Lieutenant King and in annual discrimination training. The policy plainly specifies that the EEO process is distinct from other remedies, including FCI-Sandstone's internal investigatory procedures, and makes abundantly clear (through textual emphasis) that employees who wish to pursue an EEO complaint have 45 days in which to do so. This policy was made known to staff by classroom training on employment discrimination (which Nygren attended) and posters identifying EEO counselors and the steps of the EEO process. Finally, there is no evidence that Gafkjen and various FCI-Sandstone officials, by deliberate design or affirmative conduct, did anything that they should have understood would cause Nygren to delay pursuit of her administrative remedies.

The judgment is affirmed.

_____