983 F.2d 94
 60 Fair Empl.Prac.Cas. (BNA) 889,
60 Empl. Prac. Dec. P 41,976
John O'ROURKE, Plaintiff-Appellee,
v.
CONTINENTAL CASUALTY COMPANY, doing business as CNA
Insurance Companies, Defendant-Appellant.
 No. 92-2004.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 12, 1992.
Decided Jan. 8, 1993.
Rehearing and Rehearing En Banc Denied
Feb. 3, 1993.
 
 Claudia Oney (argued), Mark Hansen, Gail Rabinowitz, Chicago, IL, for plaintiff-appellee.
 Jeffrey S. Goldman, Allison Blakley (argued), Steven L. Gillman, Fox & Grove, Chicago, IL, for defendant-appellant.
 Before FLAUM and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.
 EASTERBROOK, Circuit Judge.
 
 
 1
 CNA Insurance Companies fired John O'Rourke in 1975. After he filed a charge of age discrimination, CNA voluntarily reinstated him. Eleven years later, CNA fired O'Rourke a second time. Once again he accused CNA of age discrimination. This time CNA held its ground, and a jury concluded that CNA had not counted O'Rourke's age against him. Nonetheless O'Rourke prevailed, because the jury also found that the 1986 discharge penalized O'Rourke for the claim of discrimination in 1975. It does not seem likely that Continental would seek to "get" a disgruntled ex-employee by reinstating and employing him for 11 years, only to sack him again even though he was doing good work. Still, unlikely things happen now and then. We need not decide whether the jury's verdict (based on statements a supervisor made four years before the discharge) passes acceptable limits, cf. Samuelson v. Durkee/French Airwick, 976 F.2d 1111, 1115 (7th Cir.1992), because O'Rourke neglected to allege retaliation in a timely fashion.
 
 
 2
 A person who seeks relief under the Age Discrimination in Employment Act must meet two deadlines. First, he must file with the EEOC a charge of discrimination "within 180 days after the alleged unlawful practice occurred". 29 U.S.C. § 626(d)(1). The 180 days becomes 300 in "deferral" states, see 29 U.S.C. §§ 626(d)(2), 633. Second, he must commence suit within two years of the unlawful practice. 29 U.S.C. § 626(e)(1), incorporating 29 U.S.C. § 255. Extensions are possible: from two years to three if the violation is wilful, § 255(a), and by a year of tolling during the EEOC's efforts at conciliation, § 626(e)(2). Outer limits under the most favorable circumstances, then, are 300 days to make a charge before the administrative agency and 4 years to file suit, both measured from the act asserted to be unlawful.
 
 
 3
 CNA fired O'Rourke on February 18, 1986. He made an administrative charge on March 12, 1986, but did not allege retaliation. The factual narration in the charge (drafted by the EEOC and verified by O'Rourke) concerns age discrimination in the discharge; the document includes a check in the "age discrimination" box but not the "retaliation" box. The EEOC sent this charge to CNA. By O'Rourke's own account, the first time he alerted the EEOC to the possibility of retaliation was March 4, 1987, more than a year after the discharge, when he sent the agency a memorandum concerning his discharge and reinstatement in 1975. The memorandum did not hint at retaliation--O'Rourke offered the prior discharge as evidence that CNA generally takes employees' age into account--but we shall assume that an alert staff at the EEOC would have inferred that retaliation was a possibility. We do not know what the EEOC's staff thought of this document (its files were destroyed in routine housekeeping before trial), but we do know that the EEOC's caseworker did not amend the charge or initiate discussions with CNA about retaliation. When the EEOC closed its investigation, it found no support for O'Rourke's claim of age discrimination and did not mention retaliation.
 
 
 4
 O'Rourke began the litigation on February 1, 1988. Drafted by a lawyer, the complaint accuses CNA of age discrimination. It does not mention the discharge in 1975 or otherwise advert to retaliation. Almost three years later, on December 21, 1990, O'Rourke sought leave to amend the complaint to add a claim of retaliation. A belated amendment was appropriate, O'Rourke insisted, because not until taking the deposition of Dolores Moran in May 1990 did he recognize that his discharge in 1986 might be related to the events of 1975. Moran testified that during 1982 she had a conversation with the supervisor who ultimately fired O'Rourke, during which this supervisor characterized O'Rourke as a troublemaker and appeared itching to find an excuse to get rid of him. On February 15, 1991, the district judge denied the motion for leave to amend, excluding the retaliation theory from the case. 1991 WL 23631, 1991 U.S. Dist. LEXIS 1884 (N.D.Ill.). The court held that O'Rourke had not filed a timely charge of retaliation, neither asserting retaliation in so many words nor providing a factual account from which retaliation could be inferred. Addressing the Moran deposition, the court wrote: "O'Rourke ... asserts that he had no direct evidence of [the supervisor's] alleged retaliatory motive until the May 1990 deposition of Delores [sic] Moran. This assertion only further indicates that O'Rourke did not attempt to set forth a retaliation claim in his 1986 charge, and he apparently made no attempt to file a new charge with the EEOC within 180 days of the later revelation." Id. 1991 WL 23631 at * 4 n. 1, 1991 U.S. Dist. LEXIS 1884 at * 6 n. 1.
 
 
 5
 O'Rourke did not take the hint. Instead of filing a fresh charge with the EEOC, claiming equitable tolling as justification for the delay, see Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451-52 (7th Cir.1990), he filed a motion for reconsideration. Ten months passed. On January 7, 1992, the first day of trial, the district court granted the motion and allowed O'Rourke to amend his complaint. The judge did not explain his change of heart. After the jury returned a verdict in O'Rourke's favor on retaliation and CNA's favor on age discrimination, the judge denied CNA's post-trial motion with the explanation that the EEOC should have followed up on the memorandum O'Rourke furnished in March 1987. 1992 WL 91774, 1992 U.S. Dist. LEXIS 5228. This memo informed the EEOC about the earlier charge of age discrimination and showed that O'Rourke, who had not been promoted since 1975, believed that he had been relegated to a dead-end job. "The EEOC did not pursue the retaliation possibility; did not, apparently, talk to Dolores Moran; did not initiate any amendment of the charge; and, apparently did not aggressively pursue any investigation". Id. 1992 WL 91774 at *2, 1992 U.S. Dist. LEXIS 5228 at * 4. Although the EEOC was somnolent, the judge believed that O'Rourke had done enough.
 
 
 6
 Let us assume, with the district court, that the memo O'Rourke sent to the EEOC in March 1987, and the papers with which he thereafter peppered the agency, could have alerted mentally nimble investigators to the possibility of retaliation. Three difficulties remain. First, March 1987 is more than a year after the discharge, while § 626(d)(2) grants a maximum of 300 days to make a charge. Second, the charge serves as notice to the employer. Although issues implied by a charge and communicated to the employer in the course of investigation can enlarge the set of claims open to litigation, Jenkins v. Blue Cross Mutual Hospital Insurance, Inc., 538 F.2d 164, 167 (7th Cir.1976) (in banc), the EEOC did not pursue the possibility of retaliation, and no notice reached CNA until December 1990, when O'Rourke sought leave to amend his complaint. Third, a timely charge of retaliation is not enough; there must be a timely complaint as well. The complaint of February 1, 1988, does not mention retaliation. That omission cannot be chalked up to bureaucratic torpor! The proposed amendment of December 1990 came well after the four years that are the outer bound if all the periods are tacked together. The district judge did not mention any of these three hurdles, insurmountable individually and collectively.
 
 
 7
 Jenkins, a case under Title VII of the Civil Rights Act of 1964, articulates principles applicable to all employment discrimination regimens. We concluded that an employee may present claims "like or reasonably related to the allegations of the charge and growing out of such allegations." 538 F.2d at 167. See also, e.g., Babrocky v. Jewel Food Co., 773 F.2d 857, 864 (7th Cir.1985); Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir.1989). Is retaliation related to age discrimination in this way? We have held that it is not, Steffen v. Meridian Life Insurance Co., 859 F.2d 534, 544-45 (7th Cir.1988), and the facts of this case illustrate why. The charge of March 12, 1986, asserted age discrimination in the discharge. Nothing about that claim implied retaliation. "Retaliation" is shorthand for "adverse consequence deliberately attached to the exercise of a right protected by law." The charge did not identify the exercise of a protected right or any adverse consequence. Not until a year later did the EEOC learn about the earlier discharge and reinstatement. As we wrote in Steffen when explaining why age discrimination and retaliatory discharge were unrelated as a matter of law: "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." 859 F.2d at 544, quoting from Babrocky, 773 F.2d at 863. If O'Rourke's submissions beginning in March 1987 should have alerted the EEOC, they did nothing to alert the employer--and the alarm would have sounded, in either case, after the 300 days allowed for a charge.
 
 
 8
 Trying to put the best face on things, O'Rourke maintains that the time did not commence until May 1990, when he took Dolores Moran's deposition. Oddly, O'Rourke does not contend that he is entitled to equitable tolling. No matter. Any equitable tolling came to a halt no later than May 1990, after which O'Rourke had to act with dispatch. Yet he did not try to amend the complaint during the next seven months, and he never filed with the EEOC a charge raising this subject. Equitable tolling enlarges the time within which to proceed but does not justify omitting steps such as the administrative charge that Congress has made essential.
 
 
 9
 Courts often bend over backward to prevent forfeitures by lay persons who, in filing charges, cannot be expected to know the legal buzzwords. By 1988 O'Rourke had a lawyer. That lawyer, like the EEOC and O'Rourke himself, disdained to allege retaliatory discharge. Generosity toward people who may have been victims of discrimination does not imply disregard of statutory deadlines. Employees are not the only ones with rights under the law. See Lever v. Northwestern University, 979 F.2d 552, 554 (7th Cir.1992). When back pay is mounting, claims should be resolved with dispatch. O'Rourke and his lawyer tarried too long at every turn.
 
 
 10
 REVERSED.
 
 
 11
 HARLINGTON WOOD, Jr., Senior Circuit Judge, concurring.
 
 
 12
 The majority opinion lays out the law concisely, and I have no quarrel with the results reached on the facts in this particular case. My only limited concern is that this case not be too strictly applied by some so as to unjustifiably limit the reasonable flexibility we have allowed in the past. It is not disputed that an employee may present claims "like or reasonably related to the allegations of the charge and growing out of such allegations." It is advisable to remember that this standard, as described by Judge Cummings in Babrocky v. Jewel Food Co., 773 F.2d 857, 864 (7th Cir.1985), is "a liberal one in order to effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions." The problem, as this court found in Babrocky, 773 F.2d at 863, involves something more in the nature of a condition precedent and not the stricter requirements of subject matter jurisdiction. I hope our opinion will not be misinterpreted as holding that there can never be a factual situation where retaliation can be seen as reasonably related to age discrimination. I do not read Steffen v. Meridian Life Insurance Co., 859 F.2d 534, 544-45 (7th Cir.1988), cert. denied, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989), as mandating a strict technical determination. Checking the right box on the EEOC form is not the only criteria. It is enough, as suggested in Steffen, 859 F.2d at 544-45, that a reasonable person might merely be able to infer retaliation from the charge allegations. The precise discrimination words do not have to be used as illustrated by Jenkins v. Blue Cross Mutual Hospital Insurance, Inc., 538 F.2d 164 (7th Cir.) (en banc), cert. denied, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). In the factual situation of that case, race and sex discrimination were found to be reasonably related. Our opinion should not be given a "crabbed interpretation" as Babrocky found had been given in Jenkins by another district court.