**Maureen MARLEY, Plaintiff,**

v.

**ADDUS HEALTHCARE, INC., Defendant.**

**No. 99C5743.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 28, 2000.

Terrance A. Norton, Chicago, IL, for Plaintiff.

Bernard J. Bobber, Jason C. Turner, Foley & Lardner, Milwaukee, WI, Foley & Lardner, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Maureen Marley ("Marley") has sued her ex-employer Addus Healthcare, Inc. ("Addus"), charging that its termination of her employment violated the Age Discrimination in Employment Act ("ADEA", 29 U.S.C. §§ 621–634). At this point Addus has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56, and with both sides having complied with this District Court's related LR 56.1[1] the motion is fully briefed and ready for decision. Because Marley's lawsuit is time-barred, Addus' motion is granted and this action is dismissed with prejudice.

### Summary Judgment Standards

Familiar Rule 56 principles impose on Addus the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.,* 116 F.3d 262, 265 n. 2 (7th Cir.1997)). While "this general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central is-

---

1. LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to Addus' LR 56.1(a)(3) statement as "A. St. ¶—" and to Marley's LR 56.1(b)(3)(B) statement of additional facts as "M. St. ¶—." Responses to those statements are respectively referred to as "A. Resp. ¶—" and "M. Resp. ¶—."

sue" (*McCoy v. WGN Continental Broad. Co.*, 957 F.2d 368, 370–71 (7th Cir.1992)), that does not negate the potential for summary judgment in cases where a movant plainly satisfies the Rule 56 standards (*Washington v. Lake County*, 969 F.2d 250, 254 (7th Cir.1992)). In those terms summary judgment is appropriate only if the record reveals that no reasonable jury could conclude that Marley was treated in a statutorily discriminatory fashion (see *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir.1996) and cases cited there).

As with every summary judgment motion, this Court accepts nonmovant Marley's version of any disputed facts. What follows then in the *Facts* section is culled from the parties' submissions, but with any differences between them resolved in Marley's favor.

### Facts

Addus is a provider of home health care services and supplemental health care staffing, with its headquarters in Palatine, Illinois and offices and operations in 23 other states across the country (A.St.¶¶ 4, 6). W. Andrew Wright ("Wright") has owned Addus and served as its President since 1979 (A.St.¶ 5). On August 17, 1987 Wright hired Marley (then age 50) to be the Executive Secretary/Administrative Assistant to both him and Addus' Chief Operating Officer Mark Heaney ("Heaney") (A.St.¶ 9).

During the first few years of her employment Marley also assumed added job responsibilities in the oversight of the administration of employee benefits, including unemployment compensation, worker's compensation and health insurance (A.St. ¶ 11). In January 1990 Marley's job title became "Employment/Benefits Administrator" (A.St.¶ 17). In April 1995 her title was changed to "Benefits Manager," and she held that position until her termination (M.Resp.¶ 17).

Originally Marley worked under Heaney's supervision. Then in 1993 Heaney directed Marley to report to Wright, and in 1995 Wright in turn directed Marley to report to Addus' Chief Financial Officer Keith Rancine ("Rancine"). Even after their direct supervisory responsibilities were thus transferred, both Heaney and Wright continued to monitor and review Marley's work (M.St.¶ 1).

Marley's job performance was mixed. Throughout her tenure at Addus, each of Heaney, Wright and Rancine expressed dissatisfaction with the manner in which she interacted with other employees. Their criticism was based in part on complaints they claim to have received that Marley was difficult to work with and not helpful (A.St.¶¶ 21–23, M.Resp.¶¶ 21, 22). Wright also told Marley on several occasions that he was frustrated with her resistance to change (A.St.¶¶ 25, 27). But Marley received positive feedback on other aspects of her job performance. Heaney said that she was intelligent, knowledgeable of the benefits programs that she oversaw, dependable and loyal (M.St.¶ 5).

Marley received a few salary increases between 1987 and 1994, but she was not awarded any further raises between 1995 and 1998 (A.St.¶¶ 14, 15). In November 1994 (the last time she received a raise) Marley argued that it should be bigger. Wright rejected that argument but proposed instead to place her on the executive bonus plan, under which Addus' management awarded annual bonuses to employees based on good job performance (M.St. ¶ 2, A.St.¶ 16). Thereafter Marley was never awarded a performance bonus under the plan (A.St.¶ 16).[2]

---

2. Marley asserts that Wright never placed her on the executive bonus plan (M.St.¶ 2). But the deposition testimony she cites does not support that assertion. Moreover, Marley has not provided facts that would support a find-

ing that she had personal knowledge of whether or not Wright placed her on the plan, thus running afoul of Rule 56(e) (and of course Fed.R.Evid. 602 for the same reason).

In the last quarter of 1997 Addus began to lose money (A.St.¶ 36). Because its revenues are mainly fixed, stemming from annual contracts based on fixed-price bids, Addus decided to focus on reducing operating costs in order to improve its financial position (A.St.¶ 38). As part of Addus' cost-reduction measures, Wright and other Addus management identified various job positions that could be eliminated (A.St. ¶ 39). Wright regarded Marley's position as non-revenue-earning, and he, Heaney and accounting head Ron Ford believed that her duties could be divided and absorbed by other employees without substantial difficulty (M.Resp.¶ 40).

On March 31, 1998—at which time Marley was 61 years old—Wright met with her and told her that her employment was terminated (A.St.¶ 43). Wright explained that he had to eliminate jobs because Addus was losing money and that Marley's job was one of the positions chosen to be eliminated (A.St.¶ 44). Wright also presented Marley with a release agreement that would have allowed her to stay with Addus for 60 days and to use office resources in her job search in exchange for a release of all claims (A.St.¶ 46). After consulting with attorney Mel Kamm ("Kamm"), Marley decided not to sign the release agreement (A.St.¶ 47, M.Resp.¶ 47), and April 17 was her last day of work.

Marley's former position at Addus has not been refilled (A.St.¶ 52). As the Addus executives had anticipated, her duties were divided up and absorbed by a variety of existing Addus employees (*id.*).

Marley filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 29, 1999, 305 days after the March 31, 1998 meeting during which Wright told her that her employment was terminated. On June 23, 1999 Marley received an EEOC Notice of Right To Sue, and she filed this action on September 1, 1999.

*Timeliness of ADEA Claim*

█ Addus argues that Marley's ADEA claim must be dismissed because it is time-barred. In Illinois a claimant must file a charge of discrimination with the EEOC "within 300 days after the alleged unlawful practice occurred" (*Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1209 (7th Cir.1993), quoting 29 U.S.C. § 626(d)(2)). Ever since the seminal decision in *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), it has been clear that the 300–day clock begins to tick as soon as an employee is notified of the allegedly discriminatory adverse employment decision—not at a later date when the already-firmly-announced adverse decision takes effect.[3] As *Stark v. Dynascan Corp.* 902 F.2d 549, 551 (7th Cir.1990) describes for cases based on allegedly discriminatory terminations:

> Normally, the 300–day limitations period begins to run from the date that the employee is notified of termination, not from the later date when termination actually occurs.

There is, however, a potential for equitable tolling under circumstances sought to be invoked by Marley here—a doctrine announced in *Kephart v. Institute of Gas Tech.*, 581 F.2d 1287, 1289 (7th Cir.1978) (this quotation is adapted by substituting 300 days for 180 days because Illinois is a state that qualifies for the longer period):

> It is our conclusion, therefore, that the [300] day notice limitation of section 626(d) is tolled by the employer's failure to post conspicuously notice of ADEA rights, and that in such circumstances, the [300] day period will begin to run when the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA.

But it is important to recognize at the outset that post-*Kephart* decisions from our Court of Appeals have made it plain that the equitable principle it exemplifies

**3.** Although *Ricks* was a Title VII case, the identical principle applies under ADEA.

does not call for tolling in the usual sense: an outright postponement of the time when the clock begins to tick, followed by the full statutorily-prescribed time period during which the employee has the right to proceed. More on this later.

Marley does not dispute that she was notified of her termination on March 31, 1998, so that she filed her EEOC charge more than 300 days after the allegedly discriminatory action took place. But she seeks to invoke the *Kephart* tolling doctrine because Addus failed to post a notice of its employees' ADEA rights conspicuously in violation of 29 U.S.C. § 627. Marley supports that claim for equitable tolling with her own affidavit and affidavits by two other former Addus employees that detail the physical layout of Addus' corporate offices and aver that no notices of employees' ADEA rights were posted.

Addus does not dispute that it did not post such notices (indeed, even if it had done so this Court would have had to credit Marley's submissions for Rule 56 purposes). Instead it responds that Marley's claim is nonetheless time-barred both because she had actual notice of her ADEA rights and because she had consulted an attorney well before the 300–day period elapsed.

■ As for the *Kephart* reference to an employee's "actual knowledge of [the employee's] rights under the ADEA" as eliminating any subsequent tolling, *Schroeder v. Copley Newspaper,* 879 F.2d 266, 271 (7th Cir.1989) teaches that the employee need know only (1) that it is unlawful to discriminate on the basis of age and (2) that she is required to file a charge with EEOC to pursue a discrimination claim. Knowledge of the specific charge-filing period is not necessary (*id.* at 271–72).

■ Here there is no question but that Marley had the essential components of knowledge from the very outset. Indeed,

Marley herself had drafted Addus' employee handbook, which states that Addus will make all termination decisions without regard to age and will otherwise comply with ADEA, and she was responsible for advising branch managers (she actually conducted seminars) as to the meaning and application of those policies (A.St.¶¶ 58, 59). And Marley has further confirmed that knowledge by a total failure on her part to assign any purported lack of knowledge as playing any role in her long-delayed action, asserting instead during her own deposition testimony that between her termination and the day she filed her charge she was "doing her best" to get down to the EEOC office but was too busy to get there earlier (Marley Dep. 192–93[4]). No reasonable inference can be drawn from that testimony that Marley's filing was delayed because she *did not know* that she was required to file a charge with EEOC—to the contrary, the only reasonable inference is that Marley knew of that requirement all along, but she simply failed to make filing her charge a priority. In such circumstances the doctrine of equitable tolling does not apply.

■ Even beyond that, it will be remembered that *Kephart* itself teaches that no tolling will continue once an employee has retained a lawyer, and here Marley did consult with a lawyer the day after she was terminated. But even more important (and fatal to Marley's claim) is the earlier-referenced fact that the "equitable tolling" spoken of in *Kephart* has not been viewed by our Court of Appeals as tacking on any tolling period to the statutory period—instead it simply allows a plaintiff a reasonable time to act once in possession of the basic information about her ADEA rights. As *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 453 (7th Cir.1990) reminds us:

> We hold that a plaintiff who invokes equitable tolling to suspend the statute

---

**4.** Marley's testimony sets out a number of other things that were going on in her life at the time, but the long and short of it is that

she has no one but herself to blame for her self-selected priorities that made her filing impermissibly late for no good reason at all.

of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information.[5]

And where the plaintiff knew or should have known the relevant information before the statute of limitations has run, the presumption is that the plaintiff could have proceeded with the statutory requirements within the statutory period (*id.*).

To be sure, Marley initially spoke with Kamm about Addus' proposed release agreement and not about a potential age discrimination suit. But even if it were reasonable to draw an inference that she was not originally aware of her rights or of her need to file a charge with EEOC (inferences that are really untenable given the earlier-described evidence), she cannot shake loose from the obligation to have brought a timely charge under the principle articulated in *Cada*, because she had (or even because she could reasonably have learned) the necessary information *long* before the 300 days ran out on January 24, 1999.

*Cada*, 920 F.2d at 453 aptly sums up the appropriate response to Marley's attempt to circumvent the consequences of her own dalliance in pursuing her age discrimination claim:

> We should not trivialize the statute of limitations by promiscuous application of tolling doctrines.

That case repeats what our Court of Appeals has often emphasized: that "[s]tatutes of limitations are not arbitrary obstacles to the vindication of just claims" but rather "protect important social interests in certainty, accuracy, and repose" (*id.* at 452–53). Because Marley filed her claim five days after the 300–day time limit and

because she presents no legally justifiable grounds for equitable tolling that would have extended that limit, her claim is time-barred.

### Conclusion

Marley has failed to raise a genuine issue of material fact that could even arguably support the timeliness of filing her age discrimination charge with EEOC. Hence Addus is entitled to the protections afforded by the statutory 300–day time limit and, it follows, to summary judgment. Its Rule 56 motion is therefore granted, and this action is dismissed with prejudice.[6]

---

5. [Footnote by this Court] Although that language speaks in terms of filing suit, *Cada* like this case actually involved the obligation to file a timely EEOC charge, and the court dismissed the action based on plaintiff's failure to do so.

6. This disposition of course obviates any need to address Marley's ADEA claim on the mer-

its. But this Court is constrained to note the strong likelihood that Addus would have prevailed on summary judgment in any event—a result presaged by well-established Seventh Circuit authority, most recently the strikingly parallel decision in *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1042–45 (7th Cir. 2000).