**BRIDGEPORT MUSIC, INC.;**
**Southfield Music, Inc.;**
**Plaintiffs–Appellants,**

v.

**BOUTIT, INC., d/b/a No Limit Records;**
**Big P Music, LLC; Defendants–**
**Appellees,**

**Chrysalis Songs; Kenneth D. Franklin;**
**Silvia Music Services; Songwriter**
**Services, Inc.; Defendants.**

No. 03–5002.

United States Court of Appeals,
Sixth Circuit.

June 4, 2004.

Richard S. Busch, D'Lesli M. Davis, Jeannine Huber, King & Ballow, Nashville, TN, for Plaintiffs–Appellants.

John C. Beiter, Robert L. Sullivan, Loeb & Loeb, Nashville, TN, for Defendants–Appellees.

Before: GUY and GILMAN, Circuit Judges; and BARZILAY, Judge.[*]

RALPH B. GUY, JR., Circuit Judge.

Plaintiffs, Bridgeport Music, Inc., and Southfield Music, Inc., appeal from the decision granting summary judgment to two defendants, Boutit, Inc., d/b/a No Limit Records, and Big P Music, Inc., with respect to plaintiffs' claims that their copyrights in the musical composition "Atomic Dog" were infringed by the inclusion without permission of a sample from "Atomic Dog" in the new rap song "3 Strikes." Plaintiffs either did not appeal or have abandoned any appeal from dismissal of all other claims and all other defendants in this case.[1]

Because Boutit, d/b/a No Limit Records, has filed a voluntary petition in bankruptcy under Chapter 11, this appeal is stayed as to the debtor until the bankruptcy court either lifts the stay or concludes the bankruptcy case. *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 514–15 (6th Cir.2001). As a result, our consideration of the issues in this appeal is limited to those pertaining to Big P Music. Specifically, plaintiffs argue that the district court erred in rejecting their contention that Big P should be equitably estopped from asserting the applicable three-year statute of limitations as a bar to copyright infringement claims arising prior to May 4, 1998. After review of the record and the applicable law, we affirm.

## I.

Bridgeport Music and Southfield Music, related entities in the business of owning and exploiting copyrights in music compositions, initially asserted the claims in this case in a complaint filed on May 4, 2001. In the original complaint, Bridgeport, Southfield, and two other related record companies alleged nearly 500 counts against approximately 800 defendants for copyright infringement and other state law claims relating to music sampling. As directed by the district court's order severing the complaint into 476 separate actions, an amended complaint was filed in this case asserting that the composition "Atomic Dog" was sampled without permission in the composition "3 Strikes."[2]

### A. Background Facts

In July 1995, "3 Strikes," written and recorded by the rap group Tru, was released on the album "True." The composition "3 Strikes" was co-owned; 50% by Big P and the other 50% by Chrysalis and FurKay Music. No Limit Records obtained a mechanical license granting it permission to exploit the composition "3 Strikes" on the album and contracted to

[*] The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

1. After this appeal was filed, plaintiffs settled with defendant Chrysalis Songs and voluntarily dismissed the appeal against all defendants except Boutit and Big P Music, which plaintiffs allege are both owned primarily by rap artist Master P, a/k/a Percy Miller.

2. Sampling typically refers to the copying of a portion of a master sound recording and using it, with or without alteration, in the making of a new musical work. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 475 n. 2 (6th Cir.), *cert. denied*, —— U.S. ——, 124 S.Ct. 399, 157 L.Ed.2d 279 (2003). Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights. *Id.* at 475 n. 3.

have it manufactured and distributed by Priority Records. Under their arrangement, Priority would "cut the checks" for royalty payments owed by No Limit Records. Over 400,000 copies of the album were sold from its release through November 11, 2001.

On November 27, 1997, plaintiffs' administrator, Jane Peterer, notified Priority Records and Songwriter Services (a copyright clearance company) that the sampling from "3 Strikes" infringed plaintiffs' copyrights in "Atomic Dog." Specifically, Bridgeport and Southfield, claiming to hold 100% ownership in the composition "Atomic Dog," contend that a short vocal line and instrumental portion was copied without permission. Through Peterer, plaintiffs demanded a co-publishing agreement with 50% ownership in the composition "3 Strikes" and payment of royalties retroactive to the date of release of "3 Strikes."

Discussions followed between Peterer, as administrator for plaintiffs; Jeffrey Brabee of Chrysalis Songs, on behalf of itself and FurKay Music; and Silvia Blach of Silvia Music Services, as administrator for Big P and No Limit Records. Agreement was reached, verbally at least, that plaintiffs would receive a 50% interest in the composition "3 Strikes" and retroactive payment of royalties. Peterer stated that from November 1997 through November 1999, Blach made "continual promises" that Big P and Chrysalis would sign a written agreement granting these rights.

It was not until April 21, 1999, that Peterer first forwarded copies of the Release and Agreement assigning plaintiffs an interest in "3 Strikes" for signature by Big P and Chrysalis Songs (on behalf of itself and FurKay Music). In the cover letter of that date, Peterer stated that Priority Records had settled and agreed that plaintiffs should receive the 50% interest in "3 Strikes." In June 1999, Peterer wrote to Chrysalis and demanded that the Agreement be executed within 10 working days or the matter would be included in a lawsuit about to be filed in California. The Agreement was never signed by Chrysalis or Big P.

On the understanding that defendants had agreed to these terms, Blach determined that royalties had been distributed through December 1998 and recalculated the royalties to include plaintiffs' interest in "3 Strikes." Blach found Big P and Chrysalis had each been overpaid by $4,237.41. On June 10, 1999, Blach proposed that the overpayments be sent directly to Bridgeport. Instead, Chrysalis responded by suggesting that No Limit Records pay and make an adjustment against future royalties due to Chrysalis on "3 Strikes" and other compositions. The record does not reflect whether this adjustment was made, but it is undisputed that neither retroactive royalties nor quarterly royalties were ever paid to plaintiffs.

In November 1999, allegedly in reliance on continued assurances from Blach that Big P would execute the Agreement and defendants would pay royalties, Peterer prepared mechanical licenses on behalf of each plaintiff granting No Limit Records permission to make and distribute recordings of "3 Strikes" containing the sample from "Atomic Dog." Those licenses were accepted by Blach on behalf of No Limit Records and were fully executed by January 2000.

In September 2000, plaintiffs' counsel wrote to counsel for No Limit Records advising that royalties had not been paid "on various songs," including "3 Strikes," for the quarters ending September 1999, December 1999, March 2000 and June 2000. The letter demanded payment of all outstanding royalties within five days of receipt of the letter or suit would follow.

Counsel for No Limit Records responded promptly that the demand had been forwarded to those responsible for paying royalties, and that he thought the account was current because he had not heard from Peterer "for quite a while." The letter closed with the statement: "Clearly, I hope we can avoid litigation."[3]

## B. Procedural Facts

Plaintiffs discovered the alleged infringement in November 1997 and filed suit on May 4, 2001, more than three years later. An amended complaint was filed, discovery was conducted, and dispositive motions were brought by various defendants. In June 2002, Big P and No Limit Records moved for summary judgment on the copyright claims. In September 2002, following a ruling in a different *Bridgeport* case, counsel for plaintiffs sent a letter purporting to retroactively rescind the licenses granted to No Limit Records.

The defendants' motion was granted in part and denied in part on November 6, 2002. In that decision, the district court found that claims arising prior to May 4, 1998, were barred by the statute of limitations and rejected equitable estoppel as a basis for avoiding the limitations bar. Although not before us, the district court also rejected plaintiffs' challenge to the validity of the mechanical licenses granted to No Limit Records; concluded that plaintiffs' belated notice of rescission did not apply retroactively; and declined to exercise supplemental jurisdiction over plaintiffs' state law breach of contract claims. This left only claims against Big P for infringement arising *after* May 4, 1998. Anticipating that the district court would find the remaining claims against Big P barred for the same reasons articulated in

another case, plaintiffs voluntarily dismissed them with prejudice. Final judgment was entered on November 13, 2002, and this appeal followed.

## II.

The district court's decision granting summary judgment is reviewed *de novo. Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party, here plaintiffs, may not rest on their pleadings, but must come forward with evidence from which a rational trier of fact could find in their favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A civil action under the Copyright Act must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Because each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was commenced but does not preclude infringement claims that accrued within the statutory period. *Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481 (9th Cir. 1994); *Stone v. Williams,* 970 F.2d 1043, 1049–50 (2d Cir.1992); *Hoste v. Radio Corp. of Am.,* 654 F.2d 11, 11 (6th Cir.

---

**3.** This demand covered a dozen compositions on which plaintiffs claimed No Limit Records owed a total of more than $75,000 in royal-

ties, $14,098.54 of which allegedly pertained to "3 Strikes."

1981); *Mount v. Book–of–the–Month Club, Inc.*, 555 F.2d 1108, 1110–11 (2d Cir.1977).

Plaintiffs do not challenge the district court's conclusion that the claims of infringement arising prior to May 4, 1998, were barred by the statute of limitations. Rather, plaintiffs contest only the further determination that they failed to demonstrate that defendants should be equitably estopped from asserting the limitations defense. In the district court, plaintiffs specifically asserted fraudulent concealment as the basis for equitable estoppel. *Hill v. United States Dep't of Labor*, 65 F.3d 1331, 1335 (6th Cir.1995); *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340–41 (5th Cir.1971) (fraudulent concealment of cause of action will toll the statute of limitations). As the district court correctly noted, to avoid the bar of a statute of limitations because of a defendant's fraudulent concealment, the plaintiff must demonstrate that (1) the defendant wrongfully concealed its actions; (2) the plaintiff failed to discover the operative facts that are the basis for his cause of action within the limitations period; and (3) the plaintiff exercised due diligence until discovery of the facts. *Hill*, 65 F.3d at 1335. We find no error in the district court's conclusion that plaintiffs failed to show either wrongful concealment by defendants or that plaintiffs did not discover the operative facts that serve as the basis of the cause of action within the limitations period. In fact, plaintiffs do not directly challenge those findings.

Instead, plaintiffs have broadened their equitable estoppel claim to argue that defendants' misconduct after plaintiffs discovered the sampling "lulled" them into delaying suit. *See Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995); *Cerbone v. ILGWU*, 768 F.2d 45, 50 (2d Cir.1985); *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F.Supp. 1308, 1316–18 (S.D.N.Y.1997). Defendants object that this is a new argument presented for the first time on appeal. Despite plaintiffs' failure to cite the "lulling" cases in response to the motion for summary judgment, plaintiffs specifically argued that defendants had engaged in a four-year campaign of false promises to assign ownership and pay royalties for "3 Strikes" that "lulled plaintiffs into inaction"; and that plaintiffs forestalled bringing suit because they reasonably believed defendants would "do the right thing." (J.A. at 295, 297.) We cannot say plaintiffs waived this argument by failing to raise it in the district court.

The parameters of equitable estoppel were recently described by the Seventh Circuit as follows:

> Equitable estoppel—sometimes referred to as fraudulent concealment—"comes into play if the defendant takes active steps to prevent the plaintiff from suing in time," *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990), "such as by hiding evidence or promising not to plead the statute of limitations," *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir.1997) (quoting *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir.1995)).

*Hentosh v. Herman M. Finch Univ.*, 167 F.3d 1170, 1174 (7th Cir.1999). *Accord EEOC v. Ky. State Police Dept.*, 80 F.3d 1086, 1095 (6th Cir.1996) (quoting *Cada*, 920 F.2d at 450–51). Application of equitable estoppel " 'should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon.' " *Hentosh*, 167 F.3d at 1174 (quoting *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir.1991)); *see also Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable relief has been extended when "complainant has been induced or

tricked by his adversary's misconduct into allowing the filing deadline to pass" and has exercised due diligence in preserving his rights).[4]

In *Cerbone,* the Second Circuit likewise noted that equitable estoppel has been invoked in cases where "the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." 768 F.2d at 50. In fact, the court specifically stated that "where the defendant assures the plaintiff that he intends to settle and the plaintiff, in reasonable reliance on that assurance, delays in bringing his suit until after the statute has run, the defendant may be estopped to rely on the limitations defense." *Id.* (citing *Adkins v. Union Pac. R.R. Co.,* 685 F.2d 1146 (9th Cir.1982); *United States v. Reliance Ins. Co.,* 436 F.2d 1366 (10th Cir.1971)). "Equitable estoppel is applicable only in situations where demonstrated 'egregious wrongdoing' by a defendant prevents a plaintiff from bringing suit on a claim of which the plaintiff is aware." *Netzer,* 963 F.Supp. at 1316.

In *Buttry,* one of the cases cited by plaintiffs, the court required the plaintiff to show that "(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." 68 F.3d at 1493. There, the plaintiff delayed bringing a § 301 hybrid action on the belief that the International Union had reversed its earlier position and undertaken to represent her interests. The Second Circuit assumed for purposes of appeal that the plaintiff could show a direct misrepresentation and reasonable reliance, but still found she could not establish equitable estoppel because she had not filed her action within a reasonable time after having actual or constructive knowledge of the misrepresentation. 68 F.3d at 1494 (citing *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1324 (11th Cir.1989), and *Ott v. Midland–Ross Corp.,* 523 F.2d 1367, 1370 (6th Cir.1975)).

Here, plaintiffs discovered the alleged infringement no later than November 1997. In November 2000, three years later, one-and-a-half years had passed since defendants had verbally agreed to assign plaintiffs an interest in "3 Strikes" and pay retroactive royalties. Plaintiffs contend that they relied on unspecified assurances from defendants' administrator in issuing the mechanical licenses to No Limit Records in November 1999. The record shows that no royalties were ever paid and the Agreement was never signed. In September 2000, plaintiffs demanded unpaid royalties on several songs and again threatened to sue. The response from defendants' counsel, while expressing hope that litigation could be avoided, can hardly be said to represent affirmative assurances that defendants would pay outstanding royalties. Nor did that demand mention the uncompleted assignment of ownership in "3 Strikes." We find the district court did not err in rejecting equitable estoppel because the record does not provide sufficient evidence to conclude that it was reasonable for plaintiffs to rely on assurances made on behalf of defendants in delaying suit beyond November 2000. *See, e.g., Buttry,* 68 F.3d at 1494; *Weber v. Geffen Records, Inc.,* 63 F.Supp.2d 458, 466–67 (S.D.N.Y.1999) (no equitable estoppel because plaintiff had unreasonably relied on an "unexceptional string of empty prom-

---

**4.** In *Hill,* this court distinguished between equitable tolling and equitable estoppel, explaining that equitable tolling applies when there is no allegation of impropriety on the defendant's part. 65 F.3d at 1335, n. 2 (citing *Cada,* 920 F.2d at 451).

ises" to remedy infringements and protracted negotiations to implement those promises).

Accordingly, we **AFFIRM** the district court's decision to grant summary judgment in favor of Big P with respect to the copyright infringement claims arising prior to May 4, 1998.